UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-42446

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


WILLIAM CHARLES BACE,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                One Bowling Green

                New York, New York


                January 10, 2007

                10:58 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

1  HEARING re Doc. #93; Motion to Approve Settlement with Benison

2  and authorizing the sale of 39 Mill Dam Road, Stone Ridge, New

3  York.

4

5  HEARING re Doc #95; Supplemental motion to approve settlement

6  with Benison Corporation and Authorizing Sale of 39 Mill Dam

7  Road, Stone Ridge, New York.

8

9  HEARING re:  Doc #101; Response of the Chapter 7 Trustee to the

10 Debtor's Objection and Response to the motion for an order

11 approving the Settlement with Benison Corporation.

12

13 HEARING re:  Doc "96; Objection to motion filed by William

14 Charles Bace.

15

16

17

18

19

20

21

22

23

24

25 Transcribed by:  Pnina Eilberg.

```
1
2   A P P E A R A N C E S :
3   MANSFIELD & SERPE, PLLC
4         Attorneys for Debtor
5         267 Fifth Avenue
6         New York, NY 10016
7
8   BY:   SEAN C. SERPE, ESQ.
9
10  ARENT FOX, PLLC
11        Attorneys for Chapter 7 Trustee
12        1675 Broadway
13        New York, NY 10019
14
15  BY:   ADRIENNE WOODS BLANKLEY, ESQ.
16
17  PRYOR, CASHMAN, SHERMAN & FLYNN, LLP
18        Attorneys for Benison Corp.
19        410 Park Avenue
20        New York, NY 10022
21
22  BY:   DALLAS L. ALBAUGH, ESQ.
23
24
25
```

1              P R O C E E D I N G S

2          THE COURT:  In re Bace.

3          MS. BLANKLEY:  Good morning, Your Honor.

4          THE COURT:  Good morning.

5          MS. BLANKLEY:  Adrienne Woods Blankley with Arent Fox

6   on behalf of Roy Babbot, Chapter 7 Trustee.

7          THE COURT:  Okay.  If you've already given your name

8   you just say your name when you speak.  Okay.

9          MS. BLANKLEY:  Your Honor, I'm here today seeking

10  approval of the proposed settlement with Benison Corporation.

11  The settlement contemplates, among other things, a sales

12  Benison Corporation of 39 Mill Dam Road, located in Stone

13  Ridge, New York.  As well as settlement in allowance of

14  Benison's claim as described in the motion.  The settlement is

15  fair, reasonable and in the best interest of the estate as well

16  as its creditors.  No other offers have been received on the

17  Mill Dam Road property despite extensive marketing.  And we

18  have been advised that no better offer would likely be

19  forthcoming by GEM, the duly retained real estate agent of the

20  trustee.  This is, of course, based on the value of the

21  property as well as the condition of the structures located

22  thereon.  The settlement anticipates, approximately, 30,000

23  dollars going to the estate after the payments of all of the

24  secured creditors owning -- who have secured liens on the

25  property.  The payment of 10,000 dollars, approximately, in

1    real property taxes.  No broker's fee would be required as a

2    result of this transaction.  And the claims against the secured

3    creditors would, of course, be settled once and for all.

4              MR. BACE:  Your Honor, excuse me, if I may.  Just to

5    save time.  When I arrived here this morning, Your Honor,  I

6    was told by my attorney, Mr. Serpe, that he -- that because I'm

7    asking him to proffer a certain argument in this case that we

8    haven't gotten to yet, he was refusing to do that and he'd be

9    asking the Court for permission to withdraw as my counsel

10   today.  So, I -- if that -- if that could get addressed first,

11   I think that will maybe be dispositive because he's asking me

12   then to proceed without an attorney.

13             THE COURT:  Do you have any objection to his

14   withdrawal as counsel?

15             MR. BACE:  Oh, absolutely.  Today, yes.  I have asked

16   him to, you know, to present an argument on one of the issues

17   that was raised on Friday and Mr. Serpe won't do it and

18   therefore he wants to withdraw.  And I think my request is

19   certainly reasonable.  I'm not suggesting that Mr. Serpe has to

20   agree with everything that I believe.  But if I simply ask him

21   to present an argument to the Court, he can certainly -- and I

22   said, you can present the argument and say, I don't believe it

23   Your Honor, but Mr. Bace wants me to present this.  He's flatly

24   refusing --

25             THE COURT:  Do you seek to withdraw?

1          MR. SERPE:  Good morning, Your Honor.  Sean Serpe.

2     Yes, I do seek to withdraw.

3          THE COURT:  Well, do you seek to withdraw or just

4     simply seek to withdraw in respect of making this one point and

5     you're going to let Mr. Bace make that one point.

6          MR. SERPE:  Your Honor, at this point the

7     application, and it's an oral application, I do apologize for

8     not putting this in written from yet.  It's an oral application

9     pursuant to DR7-102, A2 and DR2-110, C1(a) and (d),

10    specifically on argument first relating to an argument that I

11    will not make on his behalf.  And it doesn't start with Friday

12    it goes before that.  But in addition, Your Honor, there's been

13    a breakdown of the attorney/client relationship.  At this

14    point, myself nor my law firm, I believe, can continue to

15    adequately represent Mr. Bace at this point.  We are,

16    essentially, being made demands of as well as being treated, I

17    think, in a way that we cannot act professionally or continue

18    to act professionally on behalf of Mr. Bace at this point.

19         MR. BACE:  Your Honor, the breakdown in communication

20    occurred when Mr. Serpe asked me on Friday for additional money

21    to pay him on his retainer agreement, which he then gave me a

22    bill on Friday which would support his services.  And then

23    twice, yesterday, he threatened me by saying what arrangements

24    am I making on his payment of the retainer agreement that I got

25    the bill for on Friday.  He's fighting about attorney's fees,

1  Your Honor.  It's ridiculous.  We -- we don't disagree about

2  anything else.  But now he's saying that because he hasn't been

3  paid for a bill that he gave me four days ago, he wants to

4  withdraw.  It's -- this is preposterous, Your Honor.  And

5  I'm -- I can't -- I have no confidence in Mr. Serpe at this

6  point.  But there's nothing -- and Your Honor, the -- the

7  argument that I have asked Mr. Serpe to make, I think, is one

8  that the Court will agree with.  And Mr. Serpe hasn't even

9  asked me how I can defend the argument.  I've just said, this

10  is what -- this is the subject that I would like you to do.

11  Meaning, I would like you not to withdraw my homestead

12  exemption but I want to be heard on it.  That's all.  And Mr.

13  Serpe says no, he has to withdraw my home -- my claim for

14  homestead exemption or he will not represent me any longer.

15        MR. SERPE:  Your Honor, if I could address those

16  points.  First of all, yes, Mr. Bace was invoiced after my

17  objection to the current application of the trustee was made.

18  That is as per my retainer.  And there was no demand for

19  immediate payment, as with all of the invoices that my firm

20  does invoice.  We request our client just to acknowledge and

21  discuss what payment arrangements there are.

22        As far as today, though, Your Honor, this is a course

23  of treatment of myself and my law firm that my client has been

24  engaged in.  And to be frank with you, when the discussion

25  regarding a mislabeled position was made, the response from my

1  client to me was, that I'm an advocate, which I agree.  And I

2  will always sell as the advocate for my client.  But that I'm

3  also a hired gun, how ridiculous that I must sound if I suggest

4  that I'm not going to take a legal position for my client.

5  And, you know, at this point, this -- and it's not just a

6  simple --

7       THE COURT:  So it's your view that the argument --

8  your concerned about Rule 11 in respect to the argument that

9  you're being asked to make?

10       MR. SERPE:  Your Honor, I am.

11       THE COURT:  All right.  You don't need to say

12  anymore.  I will deny the request except in respect of the one

13  argument that Mr. Bace has asked you to make.  I think given

14  that the timing of the request, the fact that we're here on a

15  motion that's been noticed for quite a while and --

16       MS. BACE:  Your Honor, I --

17       THE COURT:  Sit down.  That involves a transaction

18  that has its own timing; I don't want to even hear any

19  arguments about putting off that hearing, because of this.  But

20  I appreciate an attorney's concern about making an argument

21  that, in good faith they believe violates Rule 11 and I don't

22  think an attorney owes a duty to a client, certainly, to do

23  that.  So, that's my ruling on this point.

24       Okay.  You can continue.

25       MS. BLANKELY:  So, Your Honor, we then seek approval

1    of the settlement, with Benison Corporation, and all the terms

2    provided for therein.

3            THE COURT:  All right.  Now let me -- the settlement

4    is obviously -- it affects the claim but also it's tied into

5    the purchase transaction.  The settlement is it not independent

6    of the purchase transaction, correct?

7            MS. BLANKLEY:  That is correct, Your Honor.

8            THE COURT:  And now you had, on behalf of the

9    trustee, had noticed an auction to compete with the Benison

10   deal?

11           MS. BLANKLEY:  Yes, Your Honor.

12           THE COURT:  For today, were there any -- there were

13   no bidders at the auction?

14           MS. BLANKLEY:  There was only one bidder, Benison

15   Corporation, that has provided me with a bid.

16           MS. ALBAUGH:  Dallas Albuagh for Benison Corporation.

17   Actually, the bidder is Brenda Reis.

18           THE COURT:  Okay.  But it's tied into the -- it's on

19   behalf of Benison?

20           MS. ALBUAGH:  That's right.  Yeah.

21           THE COURT:  All right.  Benison's nominee.  All

22   right.  Okay.  So, I've reviewed the papers in this, including

23   the objection and response by Mr. Bace in the exhibits as well

24   as the responses to that by Benison and the trustee and the

25   exhibits thereto.  So you should assume that I've done that.

1    But I'm -- I'll hear -- I'll hear argument.

2          MR. BACE:  Your Honor, I do not -- I do not believe

3    that I have had adequate opportunity to review the 150 pages

4    that were filed yesterday with my attorney.  He's not even

5    asked -- my attorney has not even told me that there were 150

6    pages filed in this case, as of yesterday at five something in

7    the afternoon.  He hasn't even asked me if I know what they

8    are.  I received them because they were sent to Mr. Pigate by

9    e-mail.  There are -- there's -- there's -- there are at least

10    two very substantive allegations that I believe are fraudulent

11    in the papers.  And without having, at least, an opportunity to

12    speak with my attorney about them, I can't -- in good -- I

13    can't just sit here and be silent on it, Your Honor.

14          THE COURT:  That's a problem of your own making, sir.

15          MR. BACE:  Your Honor, how is I didn't know that my

16    attorney was going to withdraw.  He told me he was going to

17    withdraw.  He hasn't said anything to me, Your Honor.

18          THE COURT:  When did you receive the pleading?

19          MR. SERPE:  Your Honor, yesterday afternoon I left

20    the office and I can provide a note as to this to go out to

21    Long Island to be with my father who was hospitalized.  When I

22    got back into the office this morning I received Mr. Bace's e-

23    mail as well as the responses from Benison.

24          THE COURT:  No, I was asking Mr. Bace.

25          MR. SERPE:  Oh, I'm sorry about that.

1           THE COURT:  When did you receive it?

2           MR. BACE:  When did I receive it, Your Honor?  I

3 would say about 5 o'clock this morning.

4           THE COURT:  Okay.

5           MR. BACE:  And I've had a chance to skim it.  And

6 I -- I know, Your Honor, that there are two statements in the

7 pleading that are incorrect.

8           THE COURT:  And what are those?

9           MR. BACE:  Your Honor, if -- if as Benison contends,

10 which is not a sworn to statement but its proffered or put

11 forth by the writer of the document, it says that -- and it's

12 paragraph -- it deals with the fact that I had suggested to

13 Benison that if they lend me seventy-five -- the fifty, I would

14 increase the purchase price by 25,000 dollars.  If that were to

15 be true, Your Honor, then the closing documents would show

16 525,000 dollars as consideration, as total consideration for

17 the purchase.  Both closing documents prepared by the attorney

18 for the buyer and the attorney for the seller both show, and

19 continue to show that the consideration was 500,000 dollars

20 which was on -- which was the total amount of the contract,

21 Your Honor.  As a result there's a -- either a fraud that was

22 perpetrated on the State of New York for an incorrect document

23 that was filed with the -- for the transfer, or the statement

24 here by Benison that I, in fact, offered it this way is

25 incorrect.  I have maintained, forever, Your Honor that the --

1   that either the 75,000 dollars was a typographical error

2   because Benison only loaned me 50,000 dollars or that it's a

3   claim for usurious interest.  The 50,000 dollars, Your Honor,

4   is reflected on page 2 of the closing document that's prepared

5   by the attorney for the buyers, Your Honor.  And if the Court

6   looks at the papers that were filed in this case, you'll see

7   that page 2, which shows the 50,000 dollars that was lent by

8   Benison to me that was wired by Bace.  That paper, Your Honor,

9   has been omitted from the 150 pages here.  It is the page that

10  documents my argument that 50,000 dollars was borrowed and

11  50,000 dollars was lent.  And that 50,000 dollar notation is

12  absent from these papers.

13          Secondly, Your Honor, the claim of Gem Associates

14  that this property was marketed on their website from May

15  through December, inclusive, Your Honor.  I checked Gem's

16  website every single day.  It was marketed for two weeks and it

17  went -- and I believe the two weeks were in August.  And I

18  specifically asked Mr. Serpe to subpoena the webmaster for the

19  website which would be able to document what days they were on.

20  And Mr. Serpe has failed to do so, Your Honor.

21          And that statement that it was marketed on their

22  website continuously for eight months is a sworn to statement,

23  Your Honor, by one of the corporate officers of Gem.  So I

24  would suggest that that's just -- that's a patent lie and can

25  be easily proved by obtaining the records from the webmaster.

1    And the argument that I -- that I borrowed 75,000 dollars is

2    not reflected in any of the closing documents, Your Honor.  It

3    will not be reflected in an increase from 500,000 to 525,000

4    dollars in any paper that was filed with New York State for

5    transfer.  We would have been not -- if I did offer another --

6    an additional 25,000 dollars, then Mr. Benison or Mr. Reis

7    would have to include the 525 in his papers that he files with

8    the federal government for capital gains.  And I would suggest,

9    Your Honor, that that wasn't done.  500,000 dollars was the

10   deal and 500,000 is consistently the purchase price in every

11   document that you'll find.

12          Mr. Serpe has no idea that this argument is -- would

13   be the one that I would be advancing, Your Honor, because he

14   never even asked me.

15          THE COURT:  You just made it.

16          MR. BACE:  Perhaps, Your Honor.  But his -- I have --

17   I have no ability to call a witness.  I've got not a single

18   certified paper.  And to get 150 pages of documents three or

19   four hours before the hearing is -- certainly doesn't give

20   anybody an adequate opportunity to be prepared.

21          And then to find that the papers are -- that there

22   are relevant papers here that are missing, it has to show that

23   there's -- it's at least highly suspicious, Your Honor.  And I

24   can show you -- if the Court wants to know the page, it is --

25   it's the closing document that's prepared by a woman who

1    represented me, what was her name, Ms. Blankley?

2              MS. BLANKLEY:  I'm sorry.

3              MR. BACE:  The woman who represented the buyers in

4    the -- you've spoken to her on the phone, I know, recently.

5              MS. BLANKLEY:  I don't recall her name, I apologize.

6              MR. BACE:  Okay.  But -- just a minute, Your Honor.

7    And these papers, Your Honor, were faxed -- it says on the

8    bottom of the page that they're faxed by the firm of Matthews

9    and Greco.  I presumed -- I don't know where they went -- where

10   they were faxed to, Your Honor, but they were faxed on June the

11   2nd, 2006.  And

12             THE COURT:  Well, while you have them there let's

13   turn to one page that I found quite relevant.

14             MR. BACE:  Yes.

15             THE COURT:  This is Exhibit D, it's the seller's

16   closing statement.

17             MR. BACE:  Yes.

18             THE COURT:  There's a cover letter to Mr. Sidney

19   Reis.  Dear Mr. Reis, it's from Matthews and Greco.  Enclosed

20   are copies of all documents signed at the closing.

21             MR. BACE:  Uh-huh.

22             THE COURT:  As well as a summary of the financial

23   transaction.  Also enclosed is the original promissory note.

24   Do you see that?

25             MR. BACE:  Is there a page number at the very bottom,

1    Your Honor?

2              THE COURT:  its twelve pages into the exhibit.

3              MR. BACE:  Seller's closing statement?

4              THE COURT:  Yes.

5              MR. BACE:  Okay.

6              THE COURT:  So you have that?

7              MR. BACE:  Yes.  It says page 14 at the bottom?

8              THE COURT:  Yeah.  Do you want to turn to the second

9    page of that statement?

10             MR. BACE:  Yes.

11             THE COURT:  You see where it says funds received,

12   446,813 dollars .01 cents?

13             MR. BACE:  I'm sorry, Your Honor, 446?

14             THE COURT:  Thousand, 813 dollars and one penny.

15             MR. BACE:  Yes.

16             THE COURT:  Do you see the asterisk --

17             MR. BACE:  Yes.

18             THE COURT:  -- next to it?  Do you want to read the

19   footnote at the bottom of that?

20             MR. BACE:  Yes.  It still perpetuates the

21   typographical error of 75,000 dollars.

22             THE COURT:  You mean the phrase that says; also as

23   part of the transaction Bill Bace signed a promissory note and

24   mortgage in the amount of 75,000 dollars.

25             MR. BACE:  That's right.

1          THE COURT:  That's a typographical error?

2          MR. BACE:  The seventy-five is a typo, Your Honor.

3          THE COURT:  Okay.

4          MR. BACE:  But if you look at the document that is --

5          THE COURT:  Let me ask you a question, Mr. Bace.  Do

6   you deny that you did not have the cash to pay the 50,000

7   dollars at the closing?

8          MR. BACE:  Your Honor, my -- that whole situation is

9   fully explained in the --

10          THE COURT:  I'm just asking a question.

11          MR. BACE:  Yes.  My brothers advised me --

12          THE COURT:  You did not have the cash, right?

13          MR. BACE:  My brothers --

14          THE COURT:  To pay the 50,000 dollars?

15          MR. BACE:  On Saturday, two days prior to the closing

16   my brothers advised me that they were not going to give me the

17   50,000 that they had agreed to.

18          THE COURT:  Okay.

19          MR. BACE:  I called Mr. Reis --

20          THE COURT:  And -- let me -- I'm just going to follow

21   up with this, okay.  At that point, since -- as it seems to be

22   fairly clear from the letters starting in November in

23   connection with this transaction that the Reis' had frequently

24   been ready to walk from the transaction because it was not

25   closing.  Didn't they, at that point, have the right to walk?

1          MR. BACE:  Absolutely.  And Syd and I have been

2     friends for several years and I called him up that morning

3     frantic.  On -- it was February the 27th -- it was the 28th,

4     Your Honor, because it was a leap year.  And Sunday was the

5     29th and Monday was March the 1st.  I called him up frantic on

6     Saturday the 28th and I said, Syd, something's happened and I

7     can't close and you have every right to hold me in default and

8     declare that the contract -- that I can't close and you can

9     hold my 50,000 dollars as damages.  And he said to me, Bill

10    don't worry.  I explained about my brothers.  He said, Bill,

11    don't worry.  Come into the office -- the lawyer's office at 9

12    o'clock just that my partners were closing at 10.  And he said,

13    I'll lend you the 50,000 dollars myself.  I'll put that

14    mortgage on the -- Mill Dam Road property, which is actually

15    down the hill from the subdivision.  And this way, the 50,000

16    dollars will be between you and me.  We will attend the closing

17    at 10 o'clock and we'll say that we got the money from you, the

18    50,000 so your partners won't know that you had a temporary

19    cash flow problem and I won't lose face with my partners and

20    everything will be honkey dorey.

21          And if you look at the closing statement that is

22    filed in this case, Your Honor, which would -- it says page 54

23    at the bottom, which is the statement prepared the Law Office

24    of Vincent Catarano, which is the office that the woman who

25    represented the buyers in this case.  Her name was Angela Meyer

1    Lorie.  It shows that there's a 50,000 dollar deposit but

2    there's no page 2, Your Honor.  You'd have to go to the

3    document that I filed on May the 2nd and the proof of claim has

4    the second page attached.  And it shows the bank wire from Bill

5    Bace to the account of Benison Corporation of 50,000 dollars.

6              THE COURT:  I don't think that there's any dispute

7    that the cash was paid.  There's no dispute that the 50,000 --

8              MR. BACE:  No, 50,000 in cash --

9              THE COURT:  I understand.  There's no dispute that

10   that 50,000 was paid.

11             MR. BACE:  And a second 50,000 was the one that was

12   lent to me, Your Honor.

13             THE COURT:  I understand --

14             MR. BACE:  They're the same --

15             THE COURT:  That's fine.

16             MR. BACE:  They're the same amount.

17             THE COURT:  Okay.  I understand.

18             MR. BACE:  But where's the -- where is the 25,000

19   dollars that's missing?

20             THE COURT:  It's in the note, isn't it?

21             MR. BACE:  But if the note would reflect

22   consideration, where's the -- if somebody's lending me 25,000

23   dollars, I give them a 75,000 dollar promissory note.

24             THE COURT:  And that was why I asked you the

25   question.  Didn't they have the right to walk?

1              MR. BACE:  Yes.

2              THE COURT:  All right.

3              MR. BACE:  But if they --

4              THE COURT:  And in deciding not to walk, isn't that

5    consideration?

6              MR. BACE:  Then that -- if that were the case yes,

7    Your Honor, it would be.  And if it were the case, that I

8    agreed to give them an additional 25,000 dollars on the top of

9    the purchase price, then the purchase price would have been

10   increased from 500 to 525.  And you'll never see that, Your

11   Honor, because that never happened.

12             THE COURT:  Okay.

13             MR. BACE:  There is not one statement that says

14   525,000 dollars was the purchase price of this property.  Not a

15   single --

16             THE COURT:  All right.  No, I understand your

17   argument.

18             MR. BACE:  And as a result, Your Honor, I cannot -- I

19   mean -- I'm not prepared to prove that, Your Honor, by any kind

20   of documentary evidence.  And I think that I'm certainly --

21             THE COURT:  There's no document referred to in your

22   objection.  It's all oral

23             MR. BACE:  Which objection?

24             THE COURT:  The objection you made to the settlement.

25             MR. BACE:  But Mr. Benison is stating, through the

1  trustee's statement, that Benison -- that I agreed to increase

2  it by 25,000 dollars.  That's a statement that's being made in

3  the --

4  THE COURT:  All right.

5  MR. BACE:  -- trustee's papers.  If that were the

6  case, then there's got to be 25,000 dollars reflected somewhere

7  in the purchase price.  And it isn't there.  And I --

8  THE COURT:  But these are documents you would -- I

9  don't understand why you're referring to documents.  What

10  you're referring to is a conversation you allegedly had with

11  Mr. Reis.

12  MR. BACE:  No, Your Honor.  I'm -- I did not have --

13  I'm referring to the documents that are filed when you

14  transferred deed, Your Honor.  There's transfer taxes and there

15  are statements that are reports of sale that are filed with the

16  relevant taxing authorities.  And those documents that are

17  filed, under oath, would show what exactly is the consideration

18  -- the total consideration of the transaction.  And the

19  contract between Syd Reis and myself says, 500,000 dollars.

20  And every document that was filed subsequent to the closing

21  will show 500,000 dollars.  The statement that I was -- that I

22  was offering to pay 25,000 dollars additional can not be borne

23  -- can not be proved by a single document that has been filed

24  in this case.  And I need the opportunity to -- to either

25  subpoena them or get certified copies from the State of New

1    York to show that 500,000 dollars was the -- was the statement

2    that was maintained by Benison's corporate -- Benison's

3    corporate attorney who filed the papers.

4            THE COURT:  And you contend this issue just arose

5    this morning at 5 AM?

6            MR. BACE:  I had never heard, today -- before reading

7    that paper, I had never heard an explanation from Benison as to

8    how they explained the 75,000 dollars.  And if the Court looks

9    at my response that was filed by Mr. Serpe at 12 o'clock last

10   Friday, it says that Benison Corporation had had eight months,

11   from May 2 to the present to proffer an explanation and they

12   never did so, Your Honor.  This is the first time, in the

13   history of this case, that there's an explanation proffered as

14   to where this 25,000 dollars came from and where it went to.

15           MS. BLANKLEY:  Your Honor, if I may.  This is a

16   settlement.  It's a settlement of a disputed claim.  The

17   documents that the trustee has investigated and the

18   investigations that the trustee has pursued with both parties

19   has led the trustee to believe that the likeliest thing is just

20   what the papers reflect.  That Mr. Bace, in fact, borrowed

21   75,000 dollars as is reflected on three separate documents.

22   That he did not dispute until after the filing of his petition.

23   And Mr. Bace has not been able to provide me with anything to

24   lead me to believe otherwise.  As a result of this we

25   considered, you know, what is the likelihood if the trustee

1  were to actually try this and pursue a claim against Benison or

2  object to its claim.  And frankly, we don't believe that we

3  would be successful.  We believe it would be harmful to the

4  estate and we believe that the settlement that we have before

5  the Court today is the best opportunity that the estate has to

6  make any kind of a recovery on Mr. Bace's assets.

7        MR. BACE:  Your Honor, it's flatly untrue.  It's

8  flatly untrue.

9        MS. BLANKLEY:  Your Honor, if I may --

10       THE COURT:  Well, no let me -- let me hear what's

11  untrue.

12       MS. BLANKLEY:  Certainly.

13       MR. BACE:  That I haven't provided any documents that

14  support my claim.  I have maintained, from the beginning that

15  the closing statement that was prepared by the attorney who

16  represented the buyers shows 500 -- 50,000 dollars as the

17  earnest money that I put up.  And 50,000 dollars that I

18  "transferred" by wire.  And it shows the 500,000 dollars as the

19  purchase price.

20       THE COURT:  Doesn't it show, also, a 75,000 dollar

21  note?

22       MR. BACE:  Not -- not the closing statement from the

23  buyers attorney.

24       THE COURT:  You never signed a 75,000 dollar note?

25       MR. BACE:  Yes, Your Honor, I did.  Absolutely.

1        THE COURT:  You never signed a 75,000 dollar

2   mortgage?

3        MR. BACE:  Absolutely, Your Honor.

4        THE COURT:  What, you did or didn't?

5        MR. BACE:  I -- of course, I did.  It's my signature

6   on the papers.  But Your Honor, I explained that when I arrived

7   at 9 o'clock that morning, the papers weren't ready.  The

8   secretary hadn't finished them.  And we're waiting and the time

9   is coming and now it's getting close to 9:30 and my partners

10  are going to be arriving for the 10 o'clock meeting.  And so we

11  hurriedly signed the papers, Your Honor, so that my partners

12  would be unaware as to the transaction that Syd Reis lent me

13  the 50,000 dollars.  And so it was -- it was so hurriedly done,

14  Your Honor, that morning, that no one had an opportunity to

15  take a look at these papers.  And the 75,000 dollars was simply

16  an error.  It's only 50,000 dollars.

17       THE COURT:  Okay.  Is there any other argument on

18  this?

19       MR. BACE:  I didn't even have time to bring the -- to

20  bring certified copies, Your Honor.

21       MS. BLANKLEY:  Your Honor, I can clear up a fact

22  regarding the closing statement.  The sellers' closing

23  statement is prepared by the seller for the seller; the buyer's

24  closing statement was prepared by the buyer for the buyer.

25  Since Mr. Bace was hiding the note from his partners who were

1  the buyer and who retained the law firm to represent him in the

2  transaction, that's why their statement probably -- that's -- I

3  speculate that's why he did not disclose the note on his

4  closing statement with his partners Chelsea, Mogular.  What is

5  controlling here is the note and the mortgage.  The mortgage is

6  notarized and witnessed.  They're short documents.  They state,

7  very clearly, 75,000 dollars.

8           THE COURT:  It's on the first page.

9           MS. BLANKLEY:  Yes.

10           THE COURT:  Of the note.  The first paragraph,

11  basically.

12           MR. BACE:  Absolutely, Your Honor.

13           MS. BLANKLEY:  And our client negotiated this at the

14  request of Mr. Bace because he could not close on the purchase

15  and they were entitled to consideration for financing the

16  transaction.  Mr. Bace has not asserted any new arguments

17  today, in terms of his allegation that he's had no time to

18  prepare.  All of the documents are essentially ones that he

19  would have had in his possession for years now, the Hardenberg

20  contract, all of the notes and mortgages.  The arguments he's

21  making now are the same arguments he's been making since day

22  one of the Chapter 13 case, the Chapter 7 case.  This property

23  is valued at less then 200,000 dollars and he has done nothing

24  but escalate the fees and expenses of every single party by

25  alleging frivolous allegations.  And I think, at this time,

1    it's in the best interest of all parties to proceed and close

2    on this transaction, thank you.

3            MR. BACE:  Your Honor, the argument that was just

4    proffered says that the seller is entitled to consideration for

5    financing.  And under the relevant case law that I sited in my

6    objection, which is in re Venture Mortgage --

7            THE COURT:  No, no.  I -- that -- I don't take the

8    argument as saying that.  I don't take the argument as saying

9    that this was interest on the loan.

10           MR. BACE:  She just said it was additional

11    consideration for making the financing.

12           THE COURT:  Not for making the financing.  For doing

13    the sale.

14           MR. BACE:  No.  She just said making the financing.

15    I quote, Your Honor, it says, entitled to consideration for

16    financing.

17           THE COURT:  Well, what were you saying?  Let's

18    just  -- let's hear her.

19           MS. BLANKLEY:  What I -- my client enabled the

20    transaction to close, Mr. Bace.  To get the benefit of the

21    Hardenburg sale contract by closing on it.  And they asked --

22    actually, Mr. Bace offered 25,000 dollars, additionally, in

23    order -- in consideration in a form of a note which has only

24    eight percent interest, which is not usurious by any mean.

25           MR. BACE:  But the add -- I did -- that did not

1    happen, Your Honor.  I did not offer the seventy-five.  It was

2    never discussed.

3              THE COURT:  All right.  I understand there's a

4    dispute about that point.  I understand that.

5              MR. BACE:  And if they're maintaining that it is

6    additional consideration to do the financing, then it has to be

7    considered -- it has to be considered a bonus under the

8    statute.

9              THE COURT:  All right.  I've heard your argument on

10   that.  Do you have other arguments in respect to this motion?

11             MR. BACE:  In respect to which part of the motion,

12   Your Honor?

13             THE COURT:  Any -- any part.

14             MR. BACE:  The motion that I'm saying that we -- that

15   I need a postponement because my attorney doesn't -- isn't

16   going to represent me on this?

17             THE COURT:  Yes.  Yes.  I'll be clear.  I'm going to

18   say this one more time.  And I'm going to say it with full

19   knowledge of the history of your cases, starting in Chapter 13

20   and going to 7.

21             MR. BACE:  I don't believe -- I don't believe --

22             THE COURT:  Let me finish, sir.  You sit down.  Your

23   cases are the rare exception of cases that appear in front of

24   me and in front of the other judges of this court.  Most

25   debtors, the vast majority of debtors that appear in front of

1   me, particularly individual debtors, do not play games with

2   schedules.  Do not do anything other than cooperate with their

3   trustees and comply with the rules.  You're the exception.

4   You're the reason congress rewrote the statute to the detriment

5   of all the other debtors that appear in front of me and the

6   other judges.  This case has been one series of delays.  I'm

7   going to ask you, at some point, about Exhibit A to the

8   trustee's motion.

9           MR. BACE:  The one that was filed today?

10         THE COURT:  Yes.  Not now, but I'm going to ask you

11   about it and ask you how you could then, consequently, file the

12   objection that you filed to the original sale that the trustee

13   brought.  In particular, I'm going to ask you about paragraph C

14   of your e-mail in Exhibit A to the trustee's objection.

15           MR. BACE:  Yes.

16         THE COURT:  When you appeared in front of me,

17   originally, in your Chapter 13 case, over the strenuous

18   objection of Benison, I gave you a considerable break, which I

19   normally do with debtors, because the purpose of bankruptcy is

20   to give people a last chance to preserve their property.  Most

21   debtors' take the advantage of that opportunity.

22           MR. BACE:  I'm sorry, Your Honor.

23         THE COURT:  You have not.

24         MR. BACE:  Which case, February or March?

25         THE COURT:  NO, this is back in -- when you filed in

1 | Chapter 13 --

2 |       MR. BACE:  Yes.

3 |       THE COURT:  And Benison asked to have the case

4 | dismissed.

5 |       MR. BACE:  Yes.

6 |       THE COURT:  And I gave you the opportunity to sell

7 | this property.  And I did it more than once.  And the purpose

8 | of the Chapter 7 case was, because you couldn't do it, to give

9 | a Chapter 7 trustee the opportunity to do it.  And the Chapter

10 | 7 trustee worked with you to do it.

11 |       MR. BACE:  That's not correct, Your Honor.

12 |       THE COURT:  Let me finish, all right, and then you

13 | can respond, but that is my view.  And unlike most of the

14 | debtors that appear in front of me, you have not done that.  So

15 | when I hear today that you believe you can't represent

16 | yourself, notwithstanding everything I've heard in this case

17 | and the arguments that you've made where you've actually spot a

18 | missing page out of that 150 pages of text you say you haven't

19 | had a chance to review.  I don't believe it and I'm not going

20 | to delay this case further.  You have no credibility in front

21 | of me.  You have missed everything.  You have even defaulted on

22 | the -- on the litigation for denial of your discharge.

23 |       MR. BACE:  Absolutely.

24 |       THE COURT:  Yeah.  Absolutely, that's right.

25 |       MR. BACE:  I thought my lawyer was filing that, Your

1  Honor.  And I've been having --

2         THE COURT:  The lawyer very clearly in the conference

3  in front of me where you were on his left, as you are today,

4  said I am not representing him in that litigation.  Now, let's

5  turn --

6         MR. BACE:  Your Honor --

7         THE COURT:   -- no, no, no.  Let's turn -- because I

8  think the record should be clear on this.  Let's turn to

9  Exhibit A.  Your e-mail dated August 18th to the trustee's

10 counsel.  Where you've stated, we're in agreement with our

11 understanding to the essential terms of the deal to Ron.

12 Paragraph C, Ron will also sign a second mortgage at closing.

13 And then you deter -- described the terms of that mortgage.

14        MR. BACE: Um-hum.

15        THE COURT:  Now let's turn to your objection to the

16 trustee's motion for approval of that sale.  Termed, limited

17 objection dated September 29th.  Paragraph 14, the debtor also

18 opposes the pending motion and settlement to the extent it

19 calls for Mr. Pigate to give the trustee a 150,000 dollar

20 second mortgage on the Mill Dame Road property.  This amount

21 was never agreed to by Mr. Pigate.

22        MR. BACE:  Yes, Your Honor.

23        THE COURT:  So when you say we're in agreement with

24 the terms of the deal who is the we, we are talking about there

25 in your August 18th e-mail?

1          MR. BACE:  You'll note, Your Honor, that the sales

2     price in paragraph B is 200,000 dollars.

3          THE COURT:  No.  I -- just answer my question, who is

4     the we there, is it just you or -- does not include Mr. Pigate?

5          MR. BACE:  We were offered, Your Honor, we were told

6     that the sales price had to be fair market value and Mr. Pigate

7     was offering 200,000 dollars, Your Honor.  And Gem Associates

8     was going to do an appraisal on the property.  And the

9     agreement that we had was that if Gem Associates comes back

10    with an appraisal higher than 200,000 dollars that the

11    difference between the appraisal that Gem does and the 200,000

12    dollars would be reflected in the second mortgage because --

13         THE COURT: And is that -- is that reflected in this

14    e-mail where you say we're in agreement with our understanding

15    of the essential --

16         MR. BACE:  Yes, those dollar amounts, Your Honor.

17         THE COURT:   -- of the essential terms?

18         MR. BACE:  There is no dollar amounts.  The agreement

19    was that if the appraisal was -- if fair market value was

20    higher, that we agreed to pay it.  But we did not agree to

21    150,000 dollars additional.  And --

22         THE COURT:  Right.  Do you have anything further to

23    say on motion and on your objection to it?

24         MR. BACE:  Every time the 150,000 dollars was raised

25    as a demand as a non negotiable it was flatly turned down as

1   not being part of the deal.  Mr. Pigate was able -- we were all

2   in agreement that he was not going to get the property for less

3   than fair market value.  And the appraisal was never done, Your

4   Honor.  Gem -- they came -- one day they came --

5           THE COURT: Well, did you read the first page of

6   Exhibit A?

7           MR. BACE:  Yes, Your Honor.  That 350,000 dollars is

8   a -- was considered by the appraiser who appraised the property

9   for the mortgage company to be the value of the property not at

10  present, Your Honor.  But it is after completion, after the

11  permits are signed off, after the C of O is obtained.  And Your

12  Honor, that's at least eighteen months away if it ever comes to

13  fruition.

14          THE COURT:  Okay.

15          MR. BACE:  So that 350,000 dollars is -- what is

16  considered to be the fair market value of the property at some

17  point in the future.  And that's -- and that is the value that

18  the lender is willing to base its mortgage on.  But it has

19  never been a fair market value.  In fact every pleading that's

20  proposed in this case shows that the fair market value is 140,

21  150, maybe 170 dollars.

22          THE COURT:  Okay.  Do you have anything further to

23  say on the motion?

24          MR. BACE:  This court just said that in February --

25  in March you converted the -- my thirteen to a seven to give me

1    an opportunity to sell the property, Your Honor.  And I would

2    suggest that when a --

3          THE COURT:  Not to give you an opportunity.  But to

4    give someone who could sell it work with you and with others to

5    have it be sold.  Because you weren't able to make it happen.

6          MR. BACE:  Your Honor, on February 2nd, I believe

7    there was a hearing and you gave me thirty days to perfect the

8    financing and I came back on March the 2nd with a commitment

9    letter from Crown Mortgage that was conditional on the

10   completion.  And this court said that I had not perfected the

11   financing.  This court never said that you were giving me time

12   to sell the property.  In fact the reading of the transcript

13   will show that this court said that you were changing it from a

14   thirteen to a seven to give me an opportunity to work with the

15   trustee in order to get the financing done.

16         THE COURT:  Oh, I'm sorry, but I'm using the word

17   sell generic -- yes, finance it.  So it can be sold to Mr.

18   Pigate through financing.  It's the same thing.

19         MR. BACE:  Look -- and we have consistently worked to

20   get the financing done.  And this -- and the financing was

21   unqualifiedly given on August the 1st, Your Honor.  And the

22   trustee's attorney knew that it was an unqualified commitment

23   at that point and the mortgage lender had set a mortgage

24   date -- a closing date for the 24th, Your Honor.  And on the

25   18th, Miss Blankley telephoned the mortgage company and

1    cancelled the closing because she hadn't filed the motion to

2    have the court approve the sale. Then, a month later she files

3    a motion to have the court approve the sale, alleging a

4    contract between Mr. Pigate and that the -- that she was

5    offering and that contact never existed. Mr. Pigate is here

6    and he wants to present -- he wants to tell the court about

7    that. It was never agreed to, Your Honor and Miss Blankley was

8    asking this court to approve a contract that was not going to

9    be closed upon because no one agreed to it.

10    THE COURT: All right. Do you have anything else to

11    say on the motion?

12    MR. BACE: Your Honor, I'm not -- throughout this

13    case, I have maintained that the assets that I hoped to walk

14    out of the bankruptcy with are the two assets that Miss

15    Blankley had agreed at the beginning to help me preserve and

16    the other two assets that are just investments, we agreed that

17    those should be the ones that we would sell and that was a

18    specific agreement that we've had for months and months and

19    months. And everything that the trustee has done -- Miss

20    Blankley's office has done in this case is directly opposite,

21    Your Honor, and I'm suggesting that I cannot represent myself

22    in this case because I've got no distance. I've got no ability

23    to say what's the right argument and what's not the right

24    argument, Your Honor, and that's why I need Mr. Serpe and he's

25    unwilling to make these -- to represent me so I can't imagine

1   how I can be considered to be able to go forward and I'm asking

2   the court to allow me an opportunity to get another attorney.

3          THE COURT: But you didn't even hire counsel until

4   the trustee brought in motion to hold you in contempt.

5          MR. BACE: That's not true, Your Honor. I had spoken

6   to at least three different attorneys and they wanted $20,000.

7   I didn't have it, Your Honor.

8          THE COURT: All right. This is really getting to be

9   kind of ridiculous. Where do you live?

10          MR. BACE: Your Honor, if this court is trying to

11   have an evidentiary hearing on my home stat --

12          THE COURT: It's just a simple question. It's stated

13   in the papers that you testified at your 341 meeting that your

14   residence was where you stated in your petition. I'm just

15   trying to see if you have any factual statement about where you

16   live, that's all.

17          MR. BACE: It is my intention, Your Honor, since

18   January of 1999 that my principal residence will be Stone

19   ridge, Mill Damn Road. But there was no place to live there,

20   Your Honor. There was a vacant dilapidated farm and I spent

21   the next six years building a residence, Your Honor and I

22   contend that it is where my heart is, it is where I live and

23   want to live and will always live. I don't live there to get

24   mail because it's a barn, Your Honor, so under the relevant

25   case law that I had to look up in the last twenty-four hours

1    when Mr. Serpe advised me that he'd be not making the argument

2    about the homestead exemption, I would suggest that there's a

3    great deal of leniency that the courts have always given on

4    this subject, Your Honor.  But more importantly, Your Honor,

5    the -- there is no timely objection to the exemptions that I

6    filed in this case.  The exemption -- the objection to the

7    exemptions that I filed on behalf of Benison Corporation are to

8    the first set of exemptions.  The ones that I incorrectly

9    included under the Federal statute.  I amended the exemptions

10   on a particular date and I claimed exemptions under New York

11   State law, Your Honor, which is proper and no one has filed

12   within thirty days of the 341 hearing an objection to the

13   exceptions.  There is no exception -- objection to the

14   exemptions filed in this case timely.  The only objection to

15   the exemptions under the state law were filed by Miss Blankley

16   on Friday, the 8th of -- not the 8th, the 5th of January.  I

17   think it's the date -- the 5th and under the in RE: Wane Bell,

18   the second circuit court of appeals it clearly says that the

19   time for filing objections is thirty days after the 341 so this

20   court has no correct motion before it to even address or to

21   object to the exemptions because they were -- because there is

22   no properly timed filing of an objection, Your Honor.  So if

23   the court wants to hear my intentions about --

24            THE COURT:  When did you amend your exemption?

25            MR. BACE:  I can -- I don't know, Your Honor, because

1    I have a copy of it and any --

2            THE COURT:  Well, let me see the copy of it.  But

3    didn't you also -- didn't Benison also raise the New York

4    exemptions in their objection.

5            MR. LEVY:  Your Honor, I think -- instead of the dead

6    arrangement we have with Benison Eye well, we filed a timely

7    objection to Home state exception on conversion of the case

8    under the applicable law of government.  Objections to

9    exemptions are in conversion.  It's cited in our authority,

10   governing New York authority that says that actual occupancy is

11   required in order to sustain the Homestead exemption.  After

12   Mr. Bace amended his schedules during the chapter 7 case, we

13   timely filed within thirty days after that, a supplement, which

14   incorporated our prior exemption word for word, incorporated by

15   reference, the entire objection to the exemption.  So I submit,

16   Your Honor, you have the full record in front of you and are

17   capable at this point of determining that there is no Homestead

18   exemption as a matter of law.

19           MS. BLANKLEY:  Your Honor, just to point to something

20   in our pleadings -- regardless of where Mr. Bace aspires to

21   live, the fact of the matter is currently there are no

22   habitable structures on the property that he anticipates,

23   perhaps, living upon.  So that being said, I don't understand

24   how it could be claimed as a Homestead exemption.  There's no

25   home.

1          THE COURT:  Okay.  All right.  All right.

2          MR. BACE:  Your Honor --

3          THE COURT:  No, it's all right.

4          MR. BACE:  I don't have a copy of it.  It was never

5  served on me, Your Honor.  If it was filed, that may be true

6  but the only thing I have reflects the Federal exemption.

7  Where is it?  Can you show me?

8          MR. LEVY:  I'm not going to make anything up.  The

9  docket in this case will reflect affidavits and certificates of

10  service, by mail, to Mr. Bace of every paper that we've served

11  in this case.  Personally before he and counsel and on his

12  counsel after counsel was (indiscernible).

13          MR. BACE:  And that might be true, Your Honor, but if

14  it is Benison's Corporation's objection, then Benison

15  Corporation should be making the objection.  Not the trustee's

16  attorney.

17          THE COURT:  Well they did make it.

18          MR. BACE:  I didn't hear Benison make one statement

19  about it today, Your Honor.

20          THE COURT:  He just did.

21          MR. BACE:  That is the trustee's attorney, Your

22  Honor, not --

23          THE COURT:  No, but the -- all right.  All right I

24  have in front of me, a motion, by the chapter seven trustee in

25  this case for approval of a transaction under section 363 B and

1    F for sale of the debtor's interest at 39 Mill Damn Road, Stone

2    ridge.  And as part of the sale, the compromise of the claim of

3    Benison Corporation, which is the buyer.  The sale was subject

4    to higher and better offers and the record reflects that there

5    were no offers made higher and better than the offer of Benison

6    Corporation.

7            MR. PIGATE:  Your Honor?

8            THE COURT:  Yes.

9            MR. PIGATE:  I prepared something here that I'd like

10   to read to you.

11          THE COURT:  I -- what is the subject of it?

12          MR. PIGATE:  The subject of it is the way which the

13   trustee has communicated with us --

14          THE COURT:  That's just --

15          MR. PIGATE:  Your Honor, can I just have this

16   opportunity --

17          THE COURT:  It's just not relevant to this issue.

18          MR. PIGATE:  It's very relevant.

19          THE COURT:  I am consi --

20          MR. PIGATE:  I have something to present here.

21          THE COURT:  I'm sorry, Mr. Pigate.  What is before me

22   is not how the trustee has communicated with you, but, whether

23   I should approve a settlement and a sale.

24          MR. PIGATE:  Your Honor, his argument is that he has

25   a contract with the estate to buy the property at $200,000.

1    And he wants to express that to the court, Your Honor.

2           THE COURT: I understand that and if he -- and as

3    part of my ruling, I'm going to compare what you say his

4    agreement is with the agreement that's on the table.

5           MR. BACE: They're both on the table, Your Honor.

6           THE COURT: I understand, I believe, what the

7    agreement is.

8           MR. PIGATE: Your Honor, if I may say something. I'm

9    an outsider to this situation in a lot of respects, although,

10    still an insider and I do have some relevant things that I

11    think you would be interested in if you would just take the

12    time to hear them please. I'm not trying to interfere with the

13    court, I'm not trying to distort anything but I feel that this

14    whole thing has been distorted quite a bit, at least on the

15    side of my partner, Bill.

16           THE COURT: I'm not going to hear you. Is your offer

17    anything different that a proposal to refinance the property

18    and pay $200,000 --

19           MR. PIGATE: I have been willing, ready and able, the

20    entire time, from last year, to refinance this property, to

21    purchase this property.

22           THE COURT: For what amount?

23           MR. PIGATE: For a fair market value.

24           THE COURT: All right. Very well. You can sit down

25    now. No, you can sit down. I'm sorry, I've heard enough.

1    These poor people back here who have real cases have heard

2    enough.  Believe me, I have --

3              MR. LEVY:  Your Honor, I'd suggest for the record,

4    that just because you think it doesn't have any standing it be

5    heard anyway.  He's not a creditor of the estate.  He's a

6    competing bidder that doesn't have independent --

7              THE COURT:  He doesn't have a bid.  Once he -- he's

8    making a proposal at quote, fair market value.

9              MR. PIGATE:  I never got a chance to bid, Your Honor.

10             THE COURT:  I just gave it to you.

11             MR. PIGATE:  Your Honor --

12             THE COURT:  Do you have a bid?

13             MR. PIGATE:  I had --

14             THE COURT:  Make it.  Make it right.  Make it.  Make

15   your bid.

16             MR. PIGATE:  Your Honor, I don't have a deposit right

17   now.

18             THE COURT:  All right.  Sit down.

19             MR. PIGATE:  I flew in from Minneapolis.

20             THE COURT:  Sit down.  I gave Mr. Bace a month's

21   notice that he would have a last and final chance to make a

22   higher and better offer at the last conference.  I assume he

23   conveyed that to you.

24             MR. PIGATE:  Your honor.  Can I talk to you for one

25   second?

1           THE COURT:  No.  This is ridiculous.

2           MR. PIGATE:  I've been making the offer continuously

3    since last year.

4           THE COURT:  And you don't say what it is.

5           MR. PIGATE:  The honor was for fair market value,

6    Your Honor.

7           THE COURT:  Fine.  All right.  I understand that.

8           MR. PIGATE:  It was $200,000, Your Honor.

9           THE COURT:  Okay.  Very well.  That's what I was

10   assuming it was.  I had assumed it was for $200,000.  I

11   understand.  All right.  The trustee seeks approval of a sale

12   to Benison Corporation for $179,000, which after the compromise

13   of Benison secured claim, will result in $30,000 in cash coming

14   to the estate.  That requires me to consider both the adequacy

15   of the sale price as well as the proposed compromise with

16   Benison Corporations since the two are intertwined.  There's no

17   dispute apparently as to the secured claim of the other

18   mortgage holder.  At least Mr. Bace's opposition doesn't raise

19   any --

20          MR. BACE:  Your Honor, the papers suggest that the

21   claim that was filed by Vantecoo was late and Mr. Serpe and --

22          THE COURT:  Will you please sit down?  No.  Sit down.

23   I'm going to hold you in contempt if you interrupt me one more

24   time.  I gave you your chance to say everything and you did.

25   Now, you do not interrupt me one more time.  As I said, Mr.

1   Bace's objection to this motion raises no issue and I see no

2   issue on the other secured claim.  With regard to the

3   compromise that the trustee has entered into with Benison, I

4   reviewed the merits of the Benison claim, which the trustee has

5   analyzed independently as well.  I reviewed the closing

6   documentation; first and foremost, I reviewed the executed

7   $75,000 note as well as the $75,000 mortgage.  The standard for

8   approving a compromise in settlement is set forth in the TNT

9   Trailer Fairy case as well as numerous cases in this district

10  cited by the trustee in his response.  I conclude that the

11  settlement falls well within the lowest bounds of

12  reasonableness, considering, first and foremost the merits as

13  well as the issue of cost and delay as well as the expertise of

14  the trustee and his counsel.  In short, in response to the

15  signed note and mortgage the debtor argues that I should

16  conclude that both of those documents were scrivener's errors

17  and that based upon his representations, notwithstanding the

18  fact that I set forth in the exhibits, at least since November

19  of 2004 the seller's, the Reese's, who are in essence the

20  owners of Benison, had been threatening to walk from the

21  transaction because the transaction had not been closing.  That

22  is the sale of the property by the Benisons to Mr. Bace and his

23  partners.  And there are concerns that the check that had been

24  provided did not have sufficient funds to back it up.  It is

25  alleged by Mr. Bace that nevertheless, the Benisons were

1   prepared to finance his $50,000 additional purchase price with

2   a $50,000 secured note.  There is some chance that at a trial

3   that would prove to be true, notwithstanding the signed note

4   and mortgage and the closing statement that I quoted from

5   during your argument which refers to the $75,000 note as an

6   additional element of the transaction.  But it is at least

7   equally the case, if not more so, that I would find that at the

8   end of the day instead of walking from the transaction, as they

9   had the right to do, and as Mr. Bace has conceded today, the

10  Reese's agreed that for additional consideration in the form of

11  the note for $75,000 they would close.  Given that fact, given

12  the fact that interest would continue to accrue as well as a

13  right to attorney's fees during that litigation, the

14  settlement, clearly, to me appears to be reasonable, where

15  Benison is compromising its secured claim and taking the risk

16  that the other assets of the estate will not be sufficient to

17  pay the agreed unsecured claim.  Moreover, were that litigation

18  to continue and this transaction not to occur the estate which

19  does not have the cash to do so, would continue to have to pay

20  taxes and insurance on the property.  The debtor appears to

21  contend that the fair market value of the property is $200,000.

22  The purchase price itself is $179,000 but there's value also in

23  the settlement and there's value concluding this transaction,

24  not having the continued accrual of not only interest on the

25  secured claims but also on expenses on the property.  For

1   months, if not now, a year, the debtor has been given the

2   opportunity to come up with an alternative transaction. He has

3   focused on a refinancing of the property, pursuant to which the

4   property would be refinanced and sold to his partner. It

5   appears clear to me from the record that there was a good faith

6   attempt by the trustee to conclude that transaction but that it

7   did not occur. There was no bid today that was a real bid with

8   a real deposit and real cash behind it. There was a continuing

9   statement by Mr. Pigate that he is prepared to obtain mortgage

10   financing on the property for $200,000. However, I agree with

11   the trustee's response that the costs and risks of attaining

12   such a transaction, which on a net base is given the cost of

13   refinancing as well as the delay, would obviously decrease on a

14   net basis to the estate the $200,000 value, particularly when

15   coupled with the debtor's intention to litigate the Benison

16   claim. It is not a higher and better transaction for the

17   estate. As the trustee points out that approach would require

18   the debtor to succeed in his claim objection, at least by

19   reducing the Benison claim in total by $50,000. I find that to

20   be unlikely. Consequently, I'll approve the motion in full as

21   far as the sale and compromise. The trustee also adopts the

22   objection of Benison Corporation to Mr. Bace's Homestead

23   exemption. I want to ask the trustee on this point, is it

24   necessary to the closing to have that dealt with or can it be

25   heard on 30 days notice.

1          MS. BLANKLEY:  Your Honor.  Benison has requested

2     that we close by January 31st.  I believe that the carrying

3     cost and the interest that continue to accrue through closing

4     make it highly beneficial that it be addressed today if at all

5     possible.  Of course we could ask Benison if they would be

6     willing to grant extension but having looked at the Homestead

7     issues --

8          THE COURT:  Well the reason I'm saying this, is there

9     was no hearing scheduled on Benison's objection.  I can

10    schedule a hearing well before the 31st on that.  And I think

11    it's proper to do that.  I will give you my preliminary ruling

12    today which is I believe that the objection to the Homestead

13    exemption is well taken.  Mr. Bace acknowledges he does not

14    reside at the Mill Damn property that he's had an intention to

15    reside there but he does not reside there and that's consistent

16    with his petition and his prior testimony of the case and prior

17    pleadings he's filed.  So my preliminary ruling is that I would

18    grant the objection to the Homestead exemption but I think

19    procedurally it is Benison's objection and we need to have a

20    hearing scheduled on that point.  So I will schedule a hearing

21    on it, obviously there's been ample notice since it was made

22    months ago.  I'll schedule it for Tuesday the 23rd of January

23    at 10:00.  So, Miss Blankley, you should submit to me an order

24    granting the compromise and sale and scheduling the hearing on

25    the exemption -- objection -- for the 23rd.

1          MS. BLANKLEY:  Thank you, Your Honor.

2          THE COURT:  Actually the second part you can just say

3  is adjourned to the 23rd.

4          MS. BLANKLEY:  May we have permission to take all

5  preliminary steps with regard to the sale and the settlement

6  prior to the hearing on the Homestead objection --

7          THE COURT:  Well, yes.  That's consistent with my

8  ruling.

9          MS. BLANKLEY:  Thank you, Your Honor.

10          THE COURT:  Absolutely.

11          MR. LEVY:  Your Honor, I need to make a record of 363

12  (indiscernible) on behalf of my client with the circumstances

13  of the case.

14          THE COURT:  All right, although, implicit in my

15  finding is to the settlement is that -- I mean, a settlement

16  has to be in good faith and in the best interest of the estate

17  and I conclude it is.

18          MR. BACE:  Your Honor, if I may, I asked Mr. Serpe to

19  advise me what my -- what the appeal procedure would be if I

20  need to note that here --

21          THE COURT:  No, you don't need to note that here.

22          MR. BACE:  And if the court makes a bond or not makes

23  a bond --

24          THE COURT:  Are you seeking an injunction?

25          MR. BACE:  Yes, sir.

1          THE COURT:  All right.  For the reasons that I've

2    just given and as far as the settlement is concerned, I'll deny

3    that, but it's not going to close in any event until after the

4    23rd so you would have time to go to the district court if you

5    want.

6          MR. BACE:  And your Honor, we have, through Mr. Serpe

7    asked Miss Blankley to address the personal property -- my

8    personal property as well as Mr. Pigate's personal property

9    that remains in the Mill Damn Road property and Miss Blankley

10   has refused to return the property to us and she is insisting

11   that the property be sold and I'm suggesting that we should

12   have a right to --

13         THE COURT:  Well that's not before me today.  If

14   there is property beyond the real property which Benison is

15   buying.

16         MS. BLANKLEY:  Well, the whole house is furnished,

17   Your Honor.

18         THE COURT:  Well the trustee, I'm sure, will deal

19   with that before the closing.

20         MR. BACE:  The trustee has said that they're not

21   going to give it back to us, Your Honor.

22         THE COURT:  That's different than dealing with it.

23   If I were the trustee, I wouldn't give it back either.  There's

24   a long record in this case with how you've dealt with the

25   trustee with regard to your assets.

1              MR. BACE:  But that's not correct, Your Honor.

2              THE COURT:  I'm not going to get into that.  But

3    that's different than -- the trustee has not signed any

4    authority to deal with that property and it's not before me.

5    Benison's not buying the furniture, right?

6              MR. LEVY:  Right, we're buying the property.

7              THE COURT:  Right.  The real property.

8              MR. LEVY:  Your Honor, I have one other housekeeping

9    matter with respect to the form of order.  We would ask that

10   your Honor's order approving the sale would also include in it

11   that the objections to the claim asserted by Benison are

12   overruled by reason of the settlement.

13             THE COURT:  That's fine.  The settlement resolves the

14   objections.  It's not overruled, it just resolves them.

15             MR. LEVY:  Then what I'd suggest your Honor is that

16   the order simply say that the objection by the debtor to

17   Benison's claim is overruled as moot by virtue --

18             THE COURT:  That's fine.

19             MR. LEVY:  Would your Honor so order the record to

20   that extent --

21             THE COURT:  Well, I don't -- there's no such thing.

22   The record reflects my ruling.  But the order's the order, the

23   record's the record.

24             MR. LEVY:  Thank you.

25             THE COURT:  Okay.  Very well.  I mean, obviously as

1    far as the furniture and any personal assets are concerned, Mr.

2    Bace you owe duty to the trustee to cooperate with the trustee

3    in dealing with it and I'm holding that -- and the trustee's on

4    notice that the trustee needs to deal with it before the

5    closing.  It's that simple.  It's not before me right now.  If

6    it's to be sold, there'll be a motion to sell it.  If it's to

7    be stored, it'll be stored.  Obviously if it's not yours, it's

8    somebody else's, than it's not property of the estate and the

9    trustee doesn't have the right to it.  But if there's a

10   question as to whether it's a property of the estate or not,

11   I'll hear that.  Okay.

12           MS. BLANKLEY:  Thank you, Your Honor.

13           MR. LEVY:  Thank you judge.

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I (we), court approved transcriber(s), certify that the

5    foregoing is a correct transcript from the official electronic

6    sound recording of the proceedings in the above-entitled

7    matter.

8

9    _____ January 12, 2007

10   Signature of Transcriber              Date

11

12   Pnina Eilberg

13   typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25

**A**

**ability** 13:17 33:22
**able** 12:19 21:23
  31:1 32:5 34:1
  39:19
**above-entitled** 50:6
**absent** 12:12
**absolutely** 5:15 17:1
  22:25 23:3 24:12
  28:23,24 46:10
**account** 18:5
**accrual** 43:24
**accrue** 43:12 45:3
**acknowledge** 7:20
**acknowledges** 45:13
**act** 6:17,18
**actual** 36:10
**add** 25:25
**addition** 6:12
**additional** 6:20 13:6
  19:8 20:22 25:10
  26:6 30:21 43:1,6
  43:10
**additionally** 25:22
**address** 7:15 35:20
  47:7
**addressed** 5:10 45:4
**adequacy** 41:14
**adequate** 10:3 13:20
**adequately** 6:15
**adjourned** 46:3
**adopts** 44:21
**Adrienne** 3:15 4:5
**advancing** 13:13
**advantage** 27:21
**advise** 46:19
**advised** 4:18 16:11
  16:16 35:1
**advocate** 8:1,2
**affidavits** 37:9
**afternoon** 10:7,19
**agent** 4:19
**ago** 7:3 45:22
**agree** 5:20 7:8 8:1
  30:20 44:10
**agreed** 16:17 19:8

20:1 29:21 30:20
  33:7,9,15,16 43:10
  43:17
**agreement** 6:21,24
  29:10,23 30:9,14
  30:18 31:2 33:18
  39:4,4,7
**ALBAUGH** 3:22
  9:16
**Albuagh** 9:16,20
**allegation** 24:17
**allegations** 10:10
  24:25
**alleged** 42:25
**allegedly** 20:10
**alleging** 24:25 33:3
**allow** 34:2
**allowance** 4:13
**alternative** 44:2
**amend** 35:24
**amended** 35:9 36:12
**amount** 11:20 15:24
  18:16 29:20 39:22
**amounts** 30:16,18
**ample** 45:21
**analyzed** 42:5
**Angela** 17:25
**answer** 30:3
**anticipates** 4:22
  36:22
**anybody** 13:20
**anymore** 8:12
**anyway** 40:5
**apologize** 6:7 14:5
**apparently** 41:17
**appeal** 46:19
**appeals** 35:18
**appear** 26:23,25
  27:5 28:14
**appeared** 27:16
**appears** 43:14,20
  44:5
**applicable** 36:8
**application** 6:7,7,8
  7:17
**appraisal** 30:8,10,11

30:19 31:3
**appraised** 31:8
**appraiser** 31:8
**appreciate** 8:20
**approach** 44:17
**approval** 4:10 8:25
  29:16 37:25 41:11
**approve** 2:1,5 33:2,3
  33:8 38:23 44:20
**approved** 50:4
**approving** 2:11 42:8
  48:10
**approximately** 4:22
  4:25
**Arent** 3:10 4:5
**argues** 42:15
**argument** 5:7,16,21
  5:22 6:10,10 7:7,9
  8:7,8,13,20 10:1
  12:10 13:1,12
  19:17 23:17 25:3,8
  25:8 26:9 33:23,24
  35:1 38:24 43:5
**arguments** 8:19
  24:16,20,21 26:10
  28:17
**arose** 21:4
**arrangement** 36:6
**arrangements** 6:23
  7:21
**arrived** 5:5 23:6
**arriving** 23:10
**asked** 5:15 6:20 7:7
  7:9 8:9,13 10:5,7
  12:18 13:14 18:24
  25:21 28:3 46:18
  47:7
**asking** 5:7,9,11
  10:24 16:10 33:8
  34:1
**aspires** 36:20
**asserted** 24:16 48:11
**assets** 22:6 33:13,14
  33:16 43:16 47:25
  49:1
**Associates** 12:13

30:7,9
**assume** 9:25 40:22
**assumed** 41:10
**assuming** 41:10
**asterisk** 15:16
**attached** 18:4
**attaining** 44:11
**attempt** 44:6
**attend** 17:16
**attorney** 5:6,12 8:22
  10:4,5,12,16 11:17
  11:18 12:5 21:3
  22:15,23 26:15
  32:22 34:2 37:16
  37:21
**attorneys** 3:4,11,18
  34:6
**attorney's** 6:25 8:20
  43:13
**attorney/client** 6:13
**auction** 9:9,13
**August** 12:17 29:9
  29:25 32:21
**authorities** 20:16
**authority** 36:9,10
  48:4
**authorizing** 2:2,6
**Avenue** 3:5,19
**A2** 6:9

**B**

**B** 1:21 30:2 37:25
**Babbot** 4:6
**Bace** 1:8 2:14 4:2
  5:4,15,23 6:5,15
  6:18,19 7:16 8:13
  8:16 9:23 10:2,15
  10:24 11:2,5,9
  12:8 13:16 14:3,6
  14:14,17,21,25
  15:3,5,7,10,13,15
  15:17,20,23,25
  16:2,4,5,8,11,13
  16:15,19 17:1 18:5
  18:8,11,14,16,18
  18:21 19:1,3,6,13

19:18,23,25 20:5
20:12 21:6,20,23
22:7,13,22,25 23:3
23:5,19,25 24:12
24:14,16 25:3,10
25:14,20,22,25
26:5,11,14,21 27:9
27:15,22,24 28:2,5
28:11,23,25 29:6
29:14,22 30:1,5,16
30:18,24 31:7,15
31:24 32:6,19
33:12 34:5,10,17
35:25 36:12,20
37:2,4,10,13,18,21
39:5 40:20 41:20
42:22,25 43:9
45:13 46:18,22,25
47:6,20 48:1 49:2
**Bace's** 10:22 22:6
41:18 42:1 44:22
**back** 10:22 27:25
30:9 32:8 40:1
42:24 47:21,23
**bank** 18:4
**bankruptcy** 1:2,14
1:23 27:19 33:14
**barn** 34:24
**base** 31:18 44:12
**based** 4:20 42:17
**basically** 24:11
**basis** 44:14
**beginning** 22:14
33:15
**behalf** 4:6 6:11,18
9:8,19 35:7 46:12
**believe** 5:20,22 6:14
8:21 10:2,10 12:17
21:19,24 22:2,3,4
26:21,21 28:15,19
32:6 39:6 40:2
45:2,12
**Bell** 35:17
**beneficial** 45:4
**benefit** 25:20
**Benison** 2:1,6,11

3:18 4:10,12 9:1,9
9:14,16,19,24
10:23 11:9,13,24
12:2,8 13:6 18:5
19:25 20:1 21:7,10
22:1 27:18 28:3
35:7 36:3,6 37:14
37:18 38:3,5 41:12
41:13,16 42:3,4,20
43:15 44:15,19,22
45:1,5 47:14 48:11
**Benisons** 42:22,25
**Benison's** 4:14 9:21
21:2,2 37:14 45:9
45:19 48:5,17
**best** 4:15 22:5 25:1
46:16
**better** 4:18 38:4,5
40:22 44:16
**beyond** 47:14
**bid** 9:15 40:7,9,12
40:15 44:7,7
**bidder** 9:14,17 40:6
**bidders** 9:13
**bill** 6:22,25 7:3
15:23 17:9,10 18:4
39:15
**bit** 39:14
**BLANKELY** 8:25
**Blankley** 3:15 4:3,5
4:5,9 9:7,11,14
14:1,2,5 21:15
22:9,12 23:21 24:9
24:13 25:19 32:25
33:7,15 35:15
36:19 45:1,23 46:1
46:4,9 47:7,9,16
49:12
**Blankley's** 33:20
**bond** 46:22,23
**bonus** 26:7
**borne** 20:22
**borrowed** 12:10
13:1 21:20
**bottom** 14:8,25 15:7
15:19 17:23

**bounds** 42:11
**Bowling** 1:15
**break** 27:18
**breakdown** 6:13,19
**Brenda** 9:17
**bring** 23:19,20
**Broadway** 3:12
**broker's** 5:1
**brothers** 16:11,13
16:16 17:10
**brought** 27:13 34:4
**building** 34:21
**buy** 38:25
**buyer** 11:18 23:24
23:24 24:1 38:3
**buyers** 12:5 14:3
17:25 22:16,23
**buyer's** 23:23
**buying** 47:15 48:5,6

------

**C**

**C** 3:2,8 4:1 27:13
29:12 31:11 50:2,2
**call** 13:17
**called** 16:19 17:2,5
**calls** 29:19
**cancelled** 33:1
**capable** 36:17
**capital** 13:8
**carrying** 45:2
**case** 1:4 5:7 10:6
12:6 17:22,25 19:6
19:7 20:6,24 21:13
24:22,22 25:5 27:6
27:17,24 28:3,8,16
28:20 31:20 33:13
33:20,22 34:25
35:6,14 36:7,12
37:9,11,25 42:9
43:7 45:16 46:13
47:24
**cases** 26:19,23,23
40:1 42:9
**cash** 16:6,12 17:19
18:7,8 41:13 43:19
44:8

**CASHMAN** 3:17
**Catarano** 17:24
**cents** 15:12
**certain** 5:7
**certainly** 5:19,21
8:22 13:19 19:20
22:12
**certificates** 37:9
**certified** 13:18
20:25 23:20
**certify** 50:4
**chance** 11:5 27:20
28:19 40:9,21
41:24 43:2
**changing** 32:13
**chapter** 2:9 3:11 4:6
24:22,22 26:19
27:17 28:1,8,9,9
36:12 37:24
**Charles** 1:8 2:14
**check** 42:23
**checked** 12:15
**Chelsea** 24:4
**circuit** 35:18
**circumstances**
46:12
**cited** 36:9 42:10
**claim** 4:14 7:13 9:4
12:3,13 18:3 21:16
22:1,2,14 38:2
41:13,17,21 42:2,4
43:15,17 44:16,18
44:19 48:11,17
**claimed** 35:10 36:24
**claims** 5:2 43:25
**clear** 16:22 23:21
26:17 29:8 44:5
**clearly** 24:7 29:2
35:18 43:14
**client** 7:20,23 8:1,2
8:4,22 24:13 25:19
46:12
**close** 17:7,8 23:9
24:14 25:1,20
43:11 45:2 47:3
**closed** 33:9

closing 11:15,17
12:4 13:2,25 14:16
14:20 15:3 16:7,15
16:25 17:12,16,21
20:20 22:15,22
23:22,22,24 24:4
25:21 29:12 32:24
33:1 42:5,21 43:4
44:24 45:3 47:19
49:5
come 17:11 44:2
comes 30:9 31:12
coming 23:9 41:13
commitment 32:8
32:22
communicated
38:13,22
communication
6:19
company 31:9 32:25
compare 39:3
compete 9:9
competing 40:6
completion 31:10
32:10
comply 27:3
compromise 38:2
41:12,15 42:3,8
44:21 45:24
compromising
43:15
conceded 43:9
concern 8:20
concerned 8:8 47:2
49:1
concerns 42:23
conclude 42:10,16
44:6 46:17
concluding 43:23
condition 4:21
conditional 32:9
conference 29:2
40:22
confidence 7:5
congress 27:4
connection 16:23

consequently 27:11
44:20
consi 38:19
consider 41:14
considerable 27:18
consideration 11:16
11:16,19 18:22
19:5 20:17,18
24:15 25:4,11,15
25:23 26:6 43:10
considered 21:25
26:7,7 31:8,16
34:1
considering 42:12
consistent 45:15
46:7
consistently 13:10
32:19
contact 33:5
contemplates 4:11
contempt 34:4 41:23
contend 21:4 34:22
43:21
contends 11:9
continue 6:14,17
8:24 11:19 43:12
43:18,19 45:3
continued 43:24
continuing 44:8
continuously 12:22
41:2
contract 11:20 17:8
20:19 24:20 25:21
33:4,8 38:25
controlling 24:5
conversation 20:10
conversion 36:7,9
converted 31:25
conveyed 40:23
cooperate 27:2 49:2
copies 14:20 20:25
23:20
copy 36:1,2 37:4
Corp 3:18
corporate 12:23
21:2,3

Corporation 2:6,11
4:10,12 9:1,15,16
18:5 21:10 35:7
37:15 38:3,6 41:12
44:22
Corporations 41:16
Corporation's 37:14
correct 9:6,7 28:11
35:20 48:1 50:5
cost 42:13 44:12
45:3
costs 44:11
counsel 5:9,14 29:10
34:3 37:11,12,12
42:14
coupled 44:15
course 4:20 5:3 7:22
23:5 45:5
court 1:2,14 4:2,4,7
5:9,13,21,25 6:3
7:8 8:7,11,17 9:3,8
9:12,18,21 10:14
10:18,24 11:1,4,8
12:5 13:15,24
14:12,15,18,22
15:2,4,6,8,11,14
15:16,18,22 16:1,3
16:5,10,12,14,18
16:20 18:6,9,13,15
18:17,20,24 19:2,4
19:12,16,21,24
20:4,8 21:4,8 22:5
22:10,20,24 23:1,4
23:17 24:8,10 25:7
25:12,17 26:3,9,13
26:17,22,24 27:10
27:16,23,25 28:3,6
28:12,24 29:2,7,15
29:23 30:3,13,17
30:22 31:5,14,22
31:24 32:3,10,11
32:13,16 33:2,3,6
33:8,10 34:2,3,8
34:10,12 35:18,20
35:23,24 36:2 37:1
37:3,17,20,23 38:8

38:11,14,17,19,21
39:1,2,6,13,16,22
39:24 40:7,10,12
40:14,18,20 41:1,4
41:7,9,22 45:8
46:2,7,10,14,21,22
46:24 47:1,4,13,18
47:22 48:2,7,13,18
48:21,25 50:4
courts 35:3
cover 14:18
credibility 28:20
creditor 40:5
creditors 4:16,24
5:3
Crown 32:9
current 7:17
currently 36:21
C1(a) 6:9

D
d 1:22 4:1 6:9 14:15
Dallas 3:22 9:16
Dam 2:2,6 4:12,17
17:14
damages 17:9
Dame 29:20
Damn 34:19 38:1
45:14 47:9
date 32:24,24 35:10
35:17 50:10
dated 29:9,17
day 12:16 24:21
31:4 43:8
days 7:3 12:19 16:15
32:7 35:12,19
36:13 44:25
dead 36:5
deal 9:10 13:10
29:11,24 31:1 35:3
47:18 48:4 49:4
dealing 47:22 49:3
deals 11:12
dealt 44:24 47:24
Dear 14:19
debtor 1:10 3:4

29:17 42:15 43:20
44:1,18 48:16
**debtors** 26:25,25
27:1,5,19,21 28:14
**debtor's** 2:10 38:1
44:15
**December** 12:15
**deciding** 19:4
**declare** 17:8
**decrease** 44:13
**deed** 20:14
**default** 17:7
**defaulted** 28:21
**defend** 7:9
**delay** 28:20 42:13
44:13
**delays** 27:6
**demand** 7:18 30:25
**demands** 6:16
**denial** 28:22
**deny** 8:12 16:6 47:2
**deposit** 18:1 40:16
44:8
**described** 4:14
29:13
**despite** 4:17
**deter** 29:13
**determining** 36:17
**detriment** 27:4
**difference** 30:11
**different** 34:6 39:17
47:22 48:3
**dilapidated** 34:20
**directly** 33:20
**disagree** 7:1
**discharge** 28:22
**disclose** 24:3
**discuss** 7:21
**discussed** 26:2
**discussion** 7:24
**dismissed** 28:4
**dispositive** 5:11
**dispute** 18:6,7,9
21:22 26:4 41:17
**disputed** 21:16
**distance** 33:22

**distort** 39:13
**distorted** 39:14
**district** 1:3 42:9
47:4
**Doc** 2:1,5,9,13
**docket** 37:9
**document** 11:11,22
12:4,19 13:11,25
16:4 18:3 19:21
20:20,23
**documentary** 19:20
**documentation** 42:6
**documents** 11:15,17
12:10 13:2,18
14:20 20:8,9,13,16
21:17,21 22:13
24:6,18 42:16
**doing** 25:12
**dollar** 12:11 18:1,23
22:20,24 23:1
29:19 30:16,18
**dollars** 4:23,25
11:14,16,19 12:1,2
12:3,7,10,11 13:1
13:4,6,9 15:12,14
15:21,24 16:7,14
17:9,13,16 18:5,19
18:23 19:8,14 20:2
20:6,19,21,22 21:1
21:8,14,21 22:16
22:17,18 23:13,15
23:16 24:7,23
25:22 30:2,7,10,12
30:21,24 31:7,15
31:21
**dorey** 17:20
**DRAIN** 1:22
**DR2-110** 6:9
**DR7-102** 6:9
**duly** 4:19
**duty** 8:22 49:2

**E**

**e** 1:21,21 3:2,2 4:1,1
10:22 50:2
**earnest** 22:17

**easily** 12:25
**eight** 12:22 21:10
25:24
**eighteen** 31:12
**Eilberg** 2:25 50:12
**either** 11:21 12:1
20:24 47:23
**electronic** 50:5
**element** 43:6
**else's** 49:8
**enabled** 25:19
**enclosed** 14:19,23
**engaged** 7:24
**entered** 42:3
**entire** 36:15 39:20
**entitled** 24:15 25:4
25:15
**equally** 43:7
**error** 12:1 15:21
16:1 23:16
**errors** 42:16
**escalate** 24:24
**ESQ** 3:8,15,22
**essence** 42:19
**essential** 29:11
30:15,17
**essentially** 6:16
24:18
**estate** 4:15,19,23
22:4,5 38:25 40:5
41:14 43:16,18
44:14,17 46:16
49:8,10
**event** 47:3
**evidence** 19:20
**evidentiary** 34:11
**exactly** 20:17
**exception** 26:23
27:3 35:13 36:7
**exceptions** 35:13
**excuse** 5:4
**executed** 42:6
**exemption** 7:12,14
35:2,6,24 36:11,14
36:15,18,24 37:6
44:23 45:13,18,25

**exemptions** 35:5,7,8
35:9,10,14,15,21
36:4,9
**exhibit** 14:15 15:2
27:7,14 29:9 31:6
**exhibits** 9:23,25
42:18
**existed** 33:5
**expenses** 24:24
43:25
**expertise** 42:13
**explained** 16:9
17:10 21:8 23:6
**explanation** 21:7,11
21:13
**express** 39:1
**extension** 45:6
**extensive** 4:17
**extent** 29:18 48:20
**Eye** 36:6
**e-mail** 10:9 27:14
29:9,25 30:14

**F**

**F** 1:21 38:1 50:2
**face** 17:19
**fact** 8:14 11:12,24
21:20 23:21 31:19
32:12 36:21 42:18
43:11,12
**factual** 34:15
**failed** 12:20
**fair** 4:15 30:6,19
31:3,16,19,20
39:23 40:8 41:5
43:21
**fairly** 16:22
**Fairy** 42:9
**faith** 8:21 44:5
46:16
**falls** 42:11
**far** 7:22 44:21 47:2
49:1
**farm** 34:20
**father** 10:21
**faxed** 14:7,8,10,10

**February** 17:3
  27:24 31:24 32:6
**federal** 13:8 35:9
  37:6
**fee** 5:1
**feel** 39:13
**fees** 6:25 24:24
  43:13
**Fifth** 3:5
**fifty** 11:13
**fighting** 6:25
**file** 27:11
**filed** 2:13 10:4,6
  11:23 12:6 13:4
  17:22 18:3 20:13
  20:15,17,20,23
  21:3,9 27:9,12,25
  33:1 35:6,7,11,14
  35:15 36:6,13 37:5
  41:21 45:17
**files** 13:7 33:2
**filing** 21:22 28:25
  35:19,22
**final** 40:21
**finance** 32:17 43:1
**financial** 14:22
**financing** 24:15 25:5
  25:11,12,14,16
  26:6 32:8,11,15,18
  32:20,20 44:10
**find** 13:11,21 43:7
  44:19
**finding** 46:15
**fine** 18:15 41:7
  48:13,18
**finish** 26:22 28:12
**finished** 23:8
**firm** 6:14 7:19,23
  14:8 24:1
**first** 5:10 6:10 7:16
  21:12 24:8,10 31:5
  35:8 42:6,12
**five** 10:6
**flatly** 5:23 22:7,8
  30:25
**flew** 40:19

**flow** 17:19
**FLYNN** 3:17
**focused** 44:3
**follow** 16:20
**footnote** 15:19
**foregoing** 50:5
**foremost** 42:6,12
**forever** 11:25
**form** 25:23 43:10
  48:9
**forth** 11:11 42:8,18
**forthcoming** 4:19
**forward** 34:1
**found** 14:13
**four** 7:3 13:19
**Fox** 3:10 4:5
**frank** 7:24
**frankly** 22:2
**frantic** 17:3,5
**fraud** 11:21
**fraudulent** 10:10
**frequently** 16:23
**Friday** 5:17 6:11,20
  6:22,25 21:10
  35:16
**friends** 17:2
**frivolous** 24:25
**front** 26:23,24,25
  27:5,16 28:14,20
  29:3 36:16 37:24
**fruition** 31:13
**full** 26:18 36:16
  44:20
**fully** 16:9
**funds** 15:11 42:24
**furnished** 47:16
**furniture** 48:5 49:1
**further** 28:20 30:22
  31:22
**future** 31:17

### G

**G** 4:1
**gains** 13:8
**games** 27:1
**Gem** 4:19 12:13,23

  30:7,9,11 31:4
**Gem's** 12:15
**generic** 32:17
**getting** 23:9 34:8
**give** 13:19 16:16
  18:23 19:8 27:20
  28:8 29:19 31:25
  32:3,4,14 45:11
  47:21,23
**given** 4:7 8:13 32:21
  35:3 43:11,11 44:1
  44:12 47:2
**giving** 32:11
**go** 10:20 18:2 34:1
  47:4
**goes** 6:12
**going** 4:23 6:5 8:4
  10:16,16 16:16,20
  23:10 26:16,17,18
  26:20 27:7,10,13
  28:19 30:8 31:2
  33:8 37:8 39:3,16
  41:23 47:3,21 48:2
**good** 4:3,4 6:1 8:21
  10:12 44:5 46:16
**gotten** 5:8
**governing** 36:10
**government** 13:8
  36:8
**grant** 45:6,18
**granting** 45:24
**great** 35:3
**Greco** 14:9,19
**Green** 1:15
**gun** 8:3

### H

**habitable** 36:22
**happen** 26:1 32:5
**happened** 17:6
  19:11
**Hardenberg** 24:19
**Hardenburg** 25:21
**harmful** 22:3
**hear** 8:18 10:1,1
  22:10 25:18 28:15

  35:23 37:18 39:12
  39:16 49:11
**heard** 7:12 21:6,7
  26:9 28:16 39:25
  40:1,5 44:25
**hearing** 2:1,5,9,13
  8:19 13:19 32:7
  34:11 35:12 45:9
  45:10,20,20,24
  46:6
**heart** 34:22
**help** 33:15
**hiding** 23:25
**higher** 30:10,20 38:4
  38:5 40:22 44:16
**highly** 13:23 45:4
**hill** 17:15
**hire** 34:3
**hired** 8:3
**history** 21:13 26:19
**hold** 17:7,9 34:4
  41:23
**holder** 41:18
**holding** 49:3
**home** 7:13 34:11
  36:7,25
**homestead** 7:11,14
  35:2 36:11,17,24
  44:22 45:6,12,18
  46:6
**HON** 1:22
**honkey** 17:20
**honor** 4:3,9 5:4,5,23
  6:1,6,12,19 7:1,4,6
  7:15,22 8:10,16,25
  9:7,11 10:2,13,15
  10:17,19 11:2,6,9
  11:15,21,25 12:3,5
  12:8,13,15,20,23
  13:2,9,13,16,23
  14:6,7,10 15:1,13
  16:2,8 17:4,22
  18:2,12 19:7,11,18
  19:19 20:12,14
  21:12,15 22:7,9,25
  23:3,6,11,14,20,21

24:12 25:3,15 26:1
26:12 27:22 28:11
29:1,6,22 30:1,5,7
30:16 31:4,7,10,12
32:1,6,21,24 33:7
33:12,21,24 34:5,7
34:10,17,20,21,24
35:4,4,11,22,25
36:5,16,19 37:2,5
37:13,19,22 38:7
38:15,24 39:1,5,8
40:3,9,11,16,24
41:5,6,8,20 45:1
46:1,9,11,18 47:6
47:17,21 48:1,8,15
48:19 49:12
**Honor's** 48:10
**hoped** 33:13
**hospitalized** 10:21
**hours** 13:19 34:25
**house** 47:16
**housekeeping** 48:8
**hurriedly** 23:11,13

**I**

**idea** 13:12
**imagine** 33:25
**immediate** 7:19
**implicit** 46:14
**importantly** 35:4
**include** 13:7 30:4
48:10
**included** 35:9
**including** 9:22
**inclusive** 12:15
**incorporated** 36:14
36:14
**incorrect** 11:7,22,25
**incorrectly** 35:8
**increase** 11:14 13:3
20:1
**increased** 19:10
**independent** 9:5
40:6
**independently** 42:5
**indiscernible** 37:12

46:12
**individual** 27:1
**injunction** 46:24
**insider** 39:10
**insisting** 47:10
**insurance** 43:20
**intention** 34:17
44:15 45:14
**intentions** 35:23
**interest** 4:15 12:3
25:1,9,24 38:1
43:12,24 45:3
46:16
**interested** 39:11
**interfere** 39:12
**interrupt** 41:23,25
**intertwined** 41:16
**investigated** 21:17
**investigations** 21:18
**investments** 33:16
**invoice** 7:20
**invoiced** 7:16
**invoices** 7:19
**involves** 8:17
**Island** 10:21
**issue** 21:4 38:17
42:1,2,13
**issues** 5:16 45:7
**it'll** 49:7

**J**

**January** 1:18 34:18
35:16 45:2,22 50:9
**judge** 1:23 49:13
**judges** 26:24 27:6
**June** 14:10

**K**

**kind** 19:19 22:6 34:9
**knew** 32:22
**know** 5:16 8:5 10:7
10:15 11:6 13:24
14:4,9 17:18 21:25
35:25
**knowledge** 26:19

**L**

**L** 3:22
**late** 41:21
**law** 6:14 7:23 17:23
24:1 25:5 34:25
35:11,15 36:8,18
**lawyer** 28:25 29:2
**lawyer's** 17:11
**lead** 21:24
**leap** 17:4
**led** 21:19
**left** 10:19 29:3
**legal** 8:4
**lend** 11:13 17:13
**lender** 31:18 32:23
**lending** 18:22
**leniency** 35:3
**lent** 12:7,11 18:12
23:12
**letter** 14:18 32:9
**letters** 16:22
**let's** 14:12 25:17,18
29:4,7,8,15
**LEVY** 36:5 37:8
40:3 46:11 48:6,8
48:15,19,24 49:13
**lie** 12:24
**liens** 4:24
**likeliest** 21:19
**likelihood** 21:25
**limited** 29:16
**litigate** 44:15
**litigation** 28:22 29:4
43:13,17
**live** 34:9,16,19,22,23
34:23,23 36:21
**living** 36:23
**LLP** 3:17
**loan** 25:9
**loaned** 12:2
**located** 4:12,21
**long** 10:21 47:24
**longer** 7:14
**look** 16:4 17:21
23:15 32:19 34:25
**looked** 45:6
**looks** 12:6 21:8

**Lorie** 18:1
**lose** 17:19
**lot** 39:9
**lowest** 42:11

**M**

**mail** 10:23 34:24
37:10
**maintained** 11:25
21:2 22:14 33:13
**maintaining** 26:5
**majority** 26:25
**making** 6:4,24 8:20
10:14 24:21,21
25:11,12,14 35:1
37:15 40:8 41:2
**MANSFIELD** 3:3
**March** 17:5 27:24
31:25 32:8
**market** 30:6,19 31:3
31:16,19,20 39:23
40:8 41:5 43:21
**marketed** 12:14,16
12:21
**marketing** 4:17
**matter** 1:6 36:18,21
48:9 50:7
**Matthews** 14:8,19
**mean** 15:22 19:19
25:24 46:15 48:25
**Meaning** 7:11
**meeting** 23:10 34:13
**merits** 42:4,12
**Meyer** 17:25
**Mill** 2:2,6 4:12,17
17:14 29:20 34:19
38:1 45:14 47:9
**Minneapolis** 40:19
**minute** 14:6
**mislabeled** 7:25
**missed** 28:21
**missing** 13:22 18:19
28:18
**Mogular** 24:4
**Monday** 17:5
**money** 6:20 17:17

22:17
**month** 33:2
**months** 12:22 21:10
  31:12 33:18,18,19
  44:1 45:22
**month's** 40:20
**moot** 48:17
**morning** 4:3,4 5:5
  6:1 10:22 11:3
  17:2 21:5 23:7,14
**mortgage** 15:24
  17:14 23:2 24:5,5
  25:6 29:12,13,20
  30:12 31:9,18 32:9
  32:23,23,25 41:18
  42:7,15 43:4 44:9
**mortgages** 24:20
**motion** 2:1,5,10,13
  4:14 8:15 26:10,11
  26:14 27:8 29:16
  29:18 30:23 31:23
  33:1,3,11 34:4
  35:20 37:24 42:1
  44:20 49:6

**N**

**N** 3:2 4:1 50:2
**name** 4:7,8 14:1,5
  17:25 50:13
**necessary** 44:24
**need** 8:11 20:24
  26:15 33:24 45:19
  46:11,20,21
**needs** 49:4
**negotiable** 30:25
**negotiated** 24:13
**net** 44:12,14
**never** 13:14 19:10
  19:11 21:6,7,12
  22:24 23:1 26:2
  29:21 31:3,19
  32:11 33:5,7 37:4
  40:9
**nevertheless** 42:25
**new** 1:3,16,16 2:2,7
  3:6,13,20 4:13

11:22 13:4 20:25
  24:16 35:10 36:3
  36:10
**nominee** 9:21
**non** 30:25
**normally** 27:19
**notarized** 24:6
**notation** 12:11
**note** 10:20 14:23
  15:23 18:20,21,23
  22:21,24 23:25
  24:3,5,10 25:23
  30:1 42:7,15 43:2
  43:3,5,11 46:20,21
**notes** 24:20
**notice** 40:21 44:25
  45:21 49:4
**noticed** 8:15 9:9
**notwithstanding**
  28:16 42:17 43:3
**November** 16:22
  42:18
**number** 14:25
**numerous** 42:9
**NY** 3:6,13,20

**O**

**O** 1:21 4:1 31:11
  50:2
**oath** 20:17
**object** 22:2 35:21
**objection** 2:10,13
  5:13 7:17 9:23
  19:22,23,24 25:6
  27:12,14,18 29:15
  29:17 30:23 35:5,6
  35:12,13,14,22
  36:4,7,15 37:14,15
  42:1 44:18,22 45:9
  45:12,18,19,25
  46:6 48:16
**objections** 35:19
  36:8 48:11,14
**obtain** 44:9
**obtained** 31:11
**obtaining** 12:25

**obviously** 9:4 44:13
  45:21 48:25 49:7
**occupancy** 36:10
**occur** 43:18 44:7
**occurred** 6:20
**offer** 4:18 13:5 26:1
  38:5 39:16 40:22
  41:2
**offered** 11:24 25:22
  30:5
**offering** 20:22 30:7
  33:5
**offers** 4:16 38:4,5
**office** 10:20,22
  17:11,11,23,24
  33:20
**officers** 12:23
**official** 50:5
**Oh** 5:15 10:25 32:16
**okay** 4:7,8 8:24 9:18
  9:22 11:4 14:6
  15:5 16:3,18,21
  18:17 19:12 23:17
  31:14,22 37:1 41:9
  48:25 49:11
**omitted** 12:9
**once** 5:3 28:7 40:7
**ones** 24:18 33:17
  35:8
**opportunity** 10:3,11
  13:20 20:24 22:5
  23:14 27:21 28:6,9
  32:1,3,14 34:2
  38:16 44:2
**opposes** 29:18
**opposite** 33:20
**opposition** 41:18
**oral** 6:7,8 19:22
**order** 2:10 25:23
  32:15 36:11 45:23
  48:9,10,16,19,22
**order's** 48:22
**original** 14:23 27:12
**originally** 27:17
**outsider** 39:9
**overruled** 48:12,14

48:17
**owe** 49:2
**owes** 8:22
**owners** 42:20
**owning** 4:24
**o'clock** 11:3 17:12
  17:17 21:9 23:7,10

**P**

**P** 3:2,2 4:1
**page** 12:4,7,9 13:24
  14:8,13,25 15:7,9
  17:22 18:2,4 24:8
  28:18 31:5
**pages** 10:3,6 12:9
  13:18 15:2 28:18
**paid** 7:3 18:7,10
**paper** 12:8 13:4,18
  21:7 37:10
**papers** 9:22 10:11
  12:6,12 13:7,21,22
  14:7 20:5 21:3,20
  23:6,7,11,15 34:13
  41:20
**paragraph** 11:12
  24:10 27:13 29:12
  29:17 30:2
**Park** 3:19
**part** 15:23 26:11,13
  31:1 38:2 39:3
  46:2
**particular** 27:13
  35:10
**particularly** 27:1
  44:14
**parties** 21:18 25:1
**partner** 39:15 44:4
**partners** 17:12,18
  17:19 23:9,11,25
  24:4 42:23
**party** 24:24
**patent** 12:24
**pay** 6:21 16:6,14
  20:22 30:20 39:18
  43:17,19
**payment** 4:25 6:24

7:19,21
**payments** 4:23
**pending** 29:18
**penny** 15:14
**people** 27:20 40:1
**percent** 25:24
**perfect** 32:7
**perfected** 32:10
**permission** 5:9 46:4
**permits** 31:11
**perpetrated** 11:22
**perpetuates** 15:20
**personal** 47:7,8,8
49:1
**Personally** 37:11
**petition** 21:22 34:14
45:16
**phone** 14:4
**phrase** 15:22
**Pigate** 10:8 29:19,21
30:4,6 31:1 32:18
33:4,5 38:7,9,12
38:15,18,20,21,24
39:8,19,23 40:9,11
40:13,16,19,24
41:2,5,8 44:9
**Pigate's** 47:8
**place** 34:19
**play** 27:1
**pleading** 10:18 11:7
31:19
**pleadings** 36:20
45:17
**please** 39:12 41:22
**PLLC** 3:3,10
**Pnina** 2:25 50:12
**point** 6:4,5,6,14,15
6:18 7:6 8:5,23
16:21,25 26:4 27:7
31:17 32:23 36:17
36:19 44:23 45:20
**points** 7:16 44:17
**poor** 40:1
**position** 7:25 8:4
**possession** 24:19
**possible** 45:5

**postponement** 26:15
**preliminary** 45:11
45:17 46:5
**prepare** 24:18
**prepared** 11:17 12:4
13:20,25 17:23
19:19 22:15 23:23
23:24 38:9 43:1
44:9
**preposterous** 7:4
**present** 5:16,21,22
5:23 21:11 31:10
33:6 38:20
**preserve** 27:20
33:15
**presumed** 14:9
**price** 11:14 13:10
19:9,9,14 20:7
22:19 30:2,6 41:15
43:1,22
**principal** 34:18
**printed** 50:13
**prior** 16:15 36:14
45:16,16 46:6
**probably** 24:2
**problem** 10:14
17:19
**procedurally** 45:19
**procedure** 46:19
**proceed** 5:12 25:1
**proceedings** 50:6
**professionally** 6:17
6:18
**proffer** 5:7 21:11
**proffered** 11:10
21:13 25:4
**promissory** 14:23
15:23 18:23
**proof** 18:3
**proper** 35:11 45:11
**properly** 35:22
**property** 4:17,21,25
5:1 12:14 17:14
19:14 24:22 27:20
28:7 29:20 30:8
31:2,8,9,16 32:1

32:12 36:22 38:25
39:17,20,21 42:22
43:20,21,25 44:3,4
44:10 45:14 47:7,8
47:8,9,10,11,14,14
48:4,6,7 49:8,10
**proposal** 39:17 40:8
**proposed** 4:10 31:20
41:15
**prove** 19:19 43:3
**proved** 12:25 20:23
**provide** 10:20 21:23
**provided** 9:2,15
22:13 42:24
**PRYOR** 3:17
**purchase** 9:5,6
11:14,17 13:10
19:9,9,14 20:7
22:19 24:14 39:21
43:1,22
**purpose** 27:19 28:7
**pursuant** 6:9 44:3
**pursue** 22:1
**pursued** 21:18
**put** 11:10 17:13
22:17
**putting** 6:8 8:19

---

**Q**

**question** 16:5,10
18:25 30:3 34:12
49:10
**quite** 8:15 14:13
39:14
**quote** 25:15 40:8
**quoted** 43:4

---

**R**

**R** 1:21 3:2 4:1 50:2
**raise** 36:3 41:18
**raised** 5:17 30:24
**raises** 42:1
**rare** 26:23
**read** 15:18 31:5
38:10
**reading** 21:6 32:12
**ready** 16:24 23:7

39:19
**real** 4:19 5:1 40:1
44:7,8,8 47:14
48:7
**really** 34:8
**reason** 27:4 45:8
48:12
**reasonable** 4:15
5:19 43:14
**reasonableness**
42:12
**reasons** 47:1
**recall** 14:5
**receive** 10:18 11:1,2
**received** 4:16 10:8
10:22 15:11
**record** 29:8 36:16
38:4 40:3 44:5
46:11 47:24 48:19
48:22,23
**recording** 50:6
**records** 12:25
**record's** 48:23
**recovery** 22:6
**reducing** 44:19
**Reese's** 42:19 43:10
**reference** 36:15
**referred** 19:21
**referring** 20:9,10,13
**refers** 43:5
**refinance** 39:17,20
**refinanced** 44:4
**refinancing** 44:3,13
**reflect** 18:21 21:20
37:9
**reflected** 12:4 13:2,3
20:6 21:21 30:12
30:13
**reflects** 37:6 38:4
48:22
**refused** 47:10
**refusing** 5:8,24
**regard** 42:2 46:5
47:25
**regarding** 7:25
23:22

regardless 36:20
Reis 9:17 13:6 14:19
  14:19 16:19,23
  20:11,19 23:12
relating 6:10
relationship 6:13
relevant 13:22 14:13
  20:16 25:5 34:24
  38:17,18 39:10
remains 47:9
reports 20:15
represent 6:15 7:14
  24:1 26:16 28:15
  33:21,25
representations
  42:17
represented 14:1,3
  17:25 22:16
representing 29:4
request 5:18 7:20
  8:12,14 24:14
requested 45:1
require 44:17
required 5:1 36:11
requires 41:14
reside 45:14,15,15
residence 34:14,18
  34:21
resolves 48:13,14
respect 6:4 8:8,12
  26:10,11 48:9
respects 39:9
respond 28:13
response 2:9,10 7:25
  9:23 21:9 42:10,14
  44:11
responses 9:24
  10:23
result 5:2 11:21
  19:18 21:24 41:13
retained 4:19 24:1
retainer 6:21,24
  7:18
return 47:10
review 10:3 28:19
reviewed 9:22 42:4

42:5,6
rewrote 27:4
ridge 2:2,7 4:13
  34:19 38:2
ridiculous 7:1 8:3
  34:9 41:1
right 8:11 9:3,20,21
  9:22 15:25 16:12
  16:25 17:7 18:25
  19:2,16 20:4 26:3
  26:9 28:12,24
  30:22 33:10,23,23
  34:8 37:1,1,3,23
  37:23 39:24 40:14
  40:16,18 41:7,11
  43:9,13 46:14 47:1
  47:12 48:5,6,7
  49:5,9
risk 43:15
risks 44:11
Road 2:2,7 4:12,17
  17:14 29:20 34:19
  38:1 47:9
ROBERT 1:22
Ron 29:11,12
Roy 4:6
Rule 8:8,21
rules 27:3
ruling 8:23 39:3
  45:11,17 46:8
  48:22

_____ S _____

S 3:2 4:1
sale 2:2,6 20:15
  25:13,21 27:12
  29:16 33:2,3 38:1
  38:2,3,23 41:11,15
  42:22 44:21 45:24
  46:5 48:10
sales 4:11 30:1,6
Saturday 16:15 17:6
save 5:5
saying 6:23 7:2 25:8
  25:8,17 26:14 45:8
says 7:13 11:11 14:7

15:7,11,22 17:22
  19:13 20:19 21:10
  25:4,15 35:18
  36:10
schedule 45:10,20
  45:22
scheduled 45:9,20
schedules 27:2
  36:12
scheduling 45:24
scrivener's 42:16
Sean 3:8 6:1
second 15:8 18:4,11
  29:12,20 30:12
  35:18 40:25 46:2
Secondly 12:13
secretary 23:8
section 37:25
secured 4:24,24 5:2
  41:13,17 42:2 43:2
  43:15,25
see 12:6 14:24 15:11
  15:16 19:10 34:15
  36:2 42:1
seek 5:25 6:2,3,4
  8:25
seeking 4:9 46:24
seeks 41:11
sell 8:2 28:6 32:1,4
  32:12,17 33:17
  49:6
seller 11:18 23:23
  23:23 25:4
sellers 23:22
seller's 14:15 15:3
  42:19
sent 10:8
separate 21:21
September 29:17
series 27:6
Serpe 3:3,8 5:6,17
  5:19 6:1,1,6,20 7:5
  7:7,8,13,15 8:10
  10:19,25 12:18,20
  13:12 21:9 33:24
  35:1 41:21 46:18

47:6
served 37:5,10
service 37:10
services 6:22
set 32:23 35:8 42:8
  42:18
settled 5:3
settlement 2:1,5,11
  4:10,11,13,14,22
  9:1,3,5 19:24
  21:16,16 22:4
  29:18 38:23 42:8
  42:11 43:14,23
  46:5,15,15 47:2
  48:12,13
seven 31:25 32:14
  37:24
seventy-five 11:13
  16:2 26:1
SHERMAN 3:17
short 24:6 42:14
show 11:15,18,19
  13:22,24 20:17,21
  21:1 22:20 32:13
  37:7
shows 12:7 18:1,4
  22:16,18 31:20
side 39:15
Sidney 14:18
sign 29:12
signature 23:5 50:10
signed 14:20 15:23
  22:24 23:1,11
  31:11 42:15 43:3
  48:3
silent 10:13
simple 8:6 34:12
  49:5
simply 5:20 6:4
  23:15 48:16
single 12:16 13:17
  19:15 20:23 24:24
sir 10:14 26:22
  46:25
sit 8:17 10:13 26:22
  39:24,25 40:18,20

41:22,22
**sited** 25:5
**situation** 16:8 39:9
**six** 34:21
**skim** 11:5
**sold** 32:5,17 44:4
  47:11 49:6
**somebody** 49:8
**somebody's** 18:22
**something's** 17:6
**sorry** 10:25 14:2
  15:13 27:22 32:16
  38:21 39:25
**sound** 8:3 50:6
**SOUTHERN** 1:3
**speak** 4:8 10:12
**specific** 33:18
**specifically** 6:10
  12:18
**speculate** 24:3
**spent** 34:20
**spoken** 14:4 34:5
**spot** 28:17
**standard** 42:7
**standing** 40:4
**start** 6:11
**starting** 16:22 26:19
**stat** 34:11
**state** 11:22 13:4
  20:25 24:6 35:11
  35:15 36:7
**stated** 29:10 34:12
  34:14
**statement** 11:10,23
  12:21,22 14:16
  15:3,9 17:21,23
  19:13 20:1,2,21
  21:1 22:15,22
  23:22,23,24 24:2,4
  34:15 37:18 43:4
  44:9
**statements** 11:6
  20:15
**States** 1:2,14
**stating** 19:25
**statute** 26:8 27:4

35:9
**steps** 46:5
**Stone** 2:2,7 4:12
  34:18 38:1
**stored** 49:7,7
**strenuous** 27:17
**structures** 4:21
  36:22
**subdivision** 17:15
**subject** 7:10 35:4
  38:3,11,12
**submit** 36:15 45:23
**subpoena** 12:18
  20:25
**subsequent** 20:20
**substantive** 10:10
**succeed** 44:18
**successful** 22:3
**sufficient** 42:24
  43:16
**suggest** 8:3 12:24
  13:8 32:2 35:2
  40:3 41:20 48:15
**suggested** 11:12
**suggesting** 5:19
  33:21 47:11
**summary** 14:22
**Sunday** 17:4
**supplement** 36:13
**Supplemental** 2:5
**support** 6:22 22:14
**sure** 47:18
**suspicious** 13:23
**sustain** 36:11
**sworn** 11:10 12:22
**Syd** 17:1,6 20:19
  23:12

---

**T**

**T** 50:2,2
**table** 39:4,5
**take** 8:4 23:15 25:7
  25:8 27:21 39:11
  46:4
**taken** 45:13
**talk** 40:24

**talking** 29:24
**taxes** 5:1 20:14
  43:20
**taxing** 20:16
**telephoned** 32:25
**tell** 33:6
**temporary** 17:18
**Termed** 29:16
**terms** 9:1 24:17
  29:11,13,24 30:17
**testified** 34:13
**testimony** 45:16
**text** 28:18
**thank** 25:2 46:1,9
  48:24 49:12,13
**thereon** 4:22
**thereto** 9:25
**thing** 21:19 32:18
  37:6 39:14 48:21
**things** 4:11 39:10
**think** 5:11,18 6:17
  7:7 8:13,22 18:6
  19:20 24:25 29:8
  35:17 36:5 39:11
  40:4 45:10,18
**thirteen** 31:25 32:14
**thirty** 32:7 35:12,19
  36:13
**thought** 28:25
**Thousand** 15:14
**threatened** 6:23
**threatening** 42:20
**three** 13:18 21:21
  34:6
**tied** 9:4,18
**time** 5:5 21:12 23:8
  23:19 24:17,25
  26:18 30:24 32:11
  35:19 39:12,20
  41:24,25 47:4
**timed** 35:22
**timely** 35:5,14 36:6
  36:13
**timing** 8:14,18
**TNT** 42:8
**today** 4:9 5:10,15

7:22 9:12 21:6
  22:5 24:17 27:9
  28:15 29:3 37:19
  43:9 44:7 45:4,12
  47:13
**told** 5:6 10:5,16 30:5
**top** 19:8
**total** 11:16,20 20:18
  44:19
**Trailer** 42:9
**transaction** 5:2 8:17
  9:5,6 14:23 15:23
  16:23,24 20:18
  23:12 24:2,16 25:2
  25:20 37:25 42:21
  42:21 43:6,8,18,23
  44:2,6,12,16
**Transcribed** 2:25
**Transcriber** 50:10
**transcriber(s)** 50:4
**transcript** 32:12
  50:5
**transfer** 11:23 13:5
  20:14
**transferred** 20:14
  22:18
**treated** 6:16
**treatment** 7:23
**trial** 43:2
**true** 11:15 34:5 37:5
  37:13 43:3
**trustee** 2:9 3:11 4:6
  4:20 7:17 9:9,24
  21:17,18,19,25
  27:12 28:9,10
  29:19 32:15 33:19
  34:4 37:24 38:13
  38:22 41:11 42:3,4
  42:10,14 44:6,17
  44:21,23 47:18,20
  47:23,25 48:3 49:2
  49:2,4,9
**trustees** 27:3
**trustee's** 20:1,5 27:8
  27:14 29:9,16
  32:22 37:15,21

44:11 49:3
**try** 22:1
**trying** 34:10,15
  39:12,13
**Tuesday** 45:22
**turn** 14:13 15:8 29:5
  29:7,8,15
**turned** 30:25
**twelve** 15:2
**twenty-four** 34:25
**twice** 6:23
**two** 10:10 11:6
  12:16,17 16:15
  33:14,16 41:16
**typed** 50:13
**typo** 16:2
**typographical** 12:1
  15:21 16:1

**U**

**Uh-huh** 14:21
**Um-hum** 29:14
**unaware** 23:12
**understand** 18:9,13
  18:17 19:16 20:9
  26:3,4 36:23 39:2
  39:6 41:7,11
**understanding**
  29:11 30:14
**United** 1:2,14
**unqualified** 32:22
**unqualifiedly** 32:21
**unsecured** 43:17
**untrue** 22:7,8,11
**unwilling** 33:25
**usurious** 12:3 25:24
**U.S** 1:23

**V**

**vacant** 34:20
**value** 4:20 30:6,19
  31:3,9,16,17,19,20
  39:23 40:8 41:5
  43:21,22,23 44:14
**valued** 24:23
**Vantecoo** 41:21
**vast** 26:25

**Venture** 25:6
**view** 8:7 28:13
**Vincent** 17:24
**violates** 8:21
**virtue** 48:17

**W**

**waiting** 23:8
**walk** 16:24,25 18:25
  19:4 33:13 42:20
**walking** 43:8
**Wane** 35:17
**want** 7:12 8:18 15:8
  15:18 34:23 44:23
  47:5
**wanted** 34:6
**wants** 5:18,23 7:3
  13:24 33:6,6 35:23
  39:1
**wasn't** 13:9
**way** 6:17 11:24
  17:15 38:12
**webmaster** 12:18,25
**website** 12:14,16,19
  12:22
**weeks** 12:16,17
**went** 12:17 14:9
  21:14
**weren't** 23:7 32:5
**we'll** 17:17
**we're** 8:14 23:8
  29:10,23 30:14
  48:6
**we've** 33:18 37:10
**William** 1:8 2:13
**willing** 31:18 39:19
  45:6
**wire** 18:4 22:18
**wired** 12:8
**withdraw** 5:9,18,25
  6:2,3,4 7:4,11,13
  10:16,17
**withdrawal** 5:14
**witness** 13:17
**witnessed** 24:6
**woman** 13:25 14:3

17:24
**Woods** 3:15 4:5
**word** 32:16 36:14,14
**work** 32:4,14
**worked** 28:10 32:19
**worry** 17:10,11
**wouldn't** 47:23
**writer** 11:11
**written** 6:8

**X**

**x** 1:5,12

**Y**

**Yeah** 9:20 15:8
  28:24
**year** 17:4 39:20 41:3
  44:1
**years** 17:2 24:19
  34:21
**yesterday** 6:23 10:4
  10:6,19
**York** 1:3,16,16 2:3,7
  3:6,13,20 4:13
  11:22 13:4 21:1
  35:10 36:3,10

**$**

**$179,000** 41:12
  43:22
**$20,000** 34:6
**$200,000** 38:25
  39:18 41:8,10
  43:21 44:10,14
**$30,000** 41:13
**$50,000** 43:1,2 44:19
**$75,000** 42:7,7 43:5
  43:11

**#**

**#101** 2:9
**#93** 2:1
**#95** 2:5

**0**

**01** 15:12
**05-42446** 1:4

**1**

**1st** 17:5 32:21
**10** 1:18 17:12,17
  23:10
**10,000** 4:25
**10:00** 45:23
**10:58** 1:19
**10016** 3:6
**10019** 3:13
**10022** 3:20
**11** 8:8,21
**12** 21:9 50:9
**13** 24:22 26:19 27:17
  28:1
**14** 15:7 29:17
**140** 31:20
**150** 10:3,5 12:9
  13:18 28:18 31:21
**150,000** 29:19 30:21
  30:24
**1675** 3:12
**170** 31:21
**18th** 29:9,25 32:25
**1999** 34:18

**2**

**2** 12:4,7 18:2 21:11
**2nd** 14:11 18:3 32:6
  32:8
**200,000** 24:23 30:2,7
  30:10,11
**2004** 42:19
**2006** 14:11
**2007** 1:18 50:9
**23rd** 45:22,25 46:3
  47:4
**24th** 32:24
**25,000** 11:14 13:6
  18:18,22 19:8 20:2
  20:6,22 21:14
  25:22
**267** 3:5
**27th** 17:3
**28th** 17:3,6
**29th** 17:5 29:17

**3**
**30** 44:25
**30,000** 4:22
**31st** 45:2,10
**341** 34:13 35:12,19
**350,000** 31:7,15
**363** 37:25 46:11
**39** 2:2,6 4:12 38:1

**4**
**410** 3:19
**446** 15:13
**446,813** 15:12

**5**
**5** 11:3 21:5
**5th** 35:16,17
**50,000** 12:2,3,7,10
   12:11,11 16:6,14
   16:17 17:9,13,15
   17:18 18:1,5,7,8
   18:10,11 22:16,17
   23:13,16
**500** 19:10 22:16
**500,000** 11:19 13:3,9
   13:10 20:19,21
   21:1 22:18
**525** 13:7 19:10
**525,000** 11:16 13:3
   19:14
**54** 17:22

**7**
**7** 2:9 3:11 4:6 24:22
   26:20 28:8,9,10
   36:12
**75,000** 12:1 13:1
   15:21,24 18:23
   21:8,21 22:20,24
   23:1,15 24:7

**8**
**8th** 35:16,16
**813** 15:14

**9**
**9** 17:11 23:7

**9:30** 23:9
**96** 2:13

**VERITEXT/NEW YORK REPORTING COMPANY**