UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                    :

In re:                              :       Chapter 7
                                      :

WILLIAM CHARLES BACE,           :       Case No. 05-42446(RDD)
                                      :

                      Debtor.     :
-------------------------------------------------------------x

Appearances:

ARENT FOX LLP, by Schuyler G. Carroll, Esq. and Adrienne W. Blankley, Esq., for the chapter 7 trustee, Roy Babbitt

WILLIAM C. BACE, pro se

### MEMORANDUM OF DECISION ON CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION CLAIM

ROBERT D. DRAIN, United States Bankruptcy Judge:

        On January 4, 2007, the chapter 7 trustee (the "Trustee") objected to the homestead exemption claimed by the debtor, Mr. Bace (the "Debtor"), under N.Y. C.P.L.R. § 5206(a) (McKinney 2007) and section 522(b)(2) of the Bankruptcy Code.  11 U.S.C. § 522(b)(2).[1]

        In his response to the Trustee's objection, the Debtor argued, among other things, that the objection was untimely.  After additional briefing and a February 7, 2007 hearing, the Court issued an order on February 13, 2007 granting the Trustee's objection and denying the Debtor's claimed homestead exemption.  The Court issues this Memorandum of Decision to clarify the grounds for its holding, which were not

---

[1]  The Debtor filed a petition under chapter 13 of the Bankruptcy Code on October 16, 2005, one day before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Pub. L. 109-8 § 1501(a).  Because, as discussed below, the relevant date for determining the Debtor's homestead exemption is the chapter 13 petition date, citations are to the Bankruptcy Code in effect before BAPCPA.

sufficiently set forth in either the Court's bench ruling, which this Memorandum

supersedes, or the February 13, 2007 order.

### **Procedural Background**

As noted above, the Debtor filed a petition under chapter 13 of the

Bankruptcy Code on October 16, 2005.  His chapter 13 schedules claimed a $18,450

"federal" homestead exemption under section 522(d) of the Bankruptcy Code, 11 U.S.C.

§ 522(d)(1), in respect of real property located at 39 Mill Dam Rd., Stone Ridge, New

York (the "Property").  A creditor, Benison Corporation ("Benison"), timely objected to

the exemption claim on the basis that New York is an opt-out state that has restricted the

Debtor to the New York exemption regime.  See 11 U.S.C. § 522(b)(1); N.Y. Debtor &

Creditor Law § 284 (McKinney 2007); In re de Kleinman, 172 B.R. 764, 770-71 (Bankr.

S.D.N.Y. 1994).  Benison also contended that even if the Debtor were to claim the

Property as his homestead under New York law, see N.Y. C.P.L.R. § 5206(a), instead of

the federal scheme, the Property would not qualify as exempt.

On March 10, 2006, before a hearing was scheduled on Benison's

objection to the Debtor's claimed homestead exemption, the chapter 13 case was

converted to a case under chapter 7.  The Trustee was appointed on March 13, 2006.

Apparently realizing that he could not successfully claim the Property as

an exempt homestead under Bankruptcy Code section 522(d), on May 2, 2006 the Debtor

amended his schedules to assert a $10,000 homestead exemption under N.Y. C.P.L.R. §

5206(a).[2]  On May 31, 2006, Benison timely filed a supplemental objection to this amendment.

The Trustee focused after his appointment on negotiations with the Debtor, the Debtor's partner and lenders with respect to a proposed refinancing of the Property, which the Debtor had contended since the start of his chapter 13 case was the best way to satisfy most of the claims against him.  Eventually an agreement on the refinancing appeared to have been reached, but on the day before the September 29, 2006 hearing to approve the transaction, the Debtor objected to it, and it was never revived. The Trustee also spent considerable time and effort trying to understand the Debtor's other assets, because the Debtor was remarkably unforthcoming with regard to his disclosure obligations.  This led the Trustee on June 16, 2006 to object under section 727(a) of the Bankruptcy Code, 11 U.S.C. § 727(a), to the Debtor's discharge.  By order dated January 8, 2007, the Debtor's discharge was denied.

Having determined that he should consider alternatives to the Property's refinancing, on December 19, 2006 the Trustee moved for approval of a settlement pursuant to which the Property would be sold to Benison for, among other things, cash and satisfaction of the liens (including Benison's) on the Property, subject to higher and better offers.  No higher and better offer was received, and the settlement was approved after by order dated January 17, 2007.[3]

---

[2] The cap on the homestead exemption under N.Y. C.P.L.R. § 5206(a) was amended from $10,000 to $50,000 effective August 30, 2005, before the start of the Debtor's chapter 13 case.  2005 N.Y. Laws 623 § 1.

[3] The Trustee subsequently transferred the Property to Benison for the consideration provided in the settlement, resulting in approximately $30,000 of unencumbered proceeds.

The record of the Debtor's chapter 13 case shows that the meeting of creditors under section 341(a) of the Bankruptcy Code was adjourned twice, to February 9, 2006, because of the Debtor's failure to attend the initial meeting and his failure to have proper identification when he appeared at the first adjourned meeting. On February 9, 2006, the section 341(a) meeting in the chapter 13 case concluded.

The United Sates trustee promptly convened a new section 341(a) meeting after the March 10, 2006 conversion of the chapter 13 case to chapter 7, and that meeting was continued from April to June to July 2006 and has not concluded. Counsel for the Trustee stated at the hearing on the Debtor's homestead exemption claim that the Trustee kept the section 341(a) meeting open because of his focus on the proposed refinancing of the Property, and, as noted, the Trustee also became enmeshed in issues regarding the Debtor's failure to perform his disclosure obligations, leading to the denial of the Debtor's discharge. Until the February 7, 2007 hearing on the Trustee's objection to his exemption claim, the Debtor never complained about the section 341(a) meeting being kept open or requested that it be concluded.

The Trustee objected to the Debtor's claimed homestead exemption on January 4, 2007. Although Benison's objection to the Debtor's homestead exemption claim was scheduled to be heard on January 10, 2007, after the Trustee filed his objection the Court adjourned the hearing to January 23, 2007.

In the Debtor's January 23, 2007 response to Benison and the Trustee's objections to his homestead exemption claim, the Debtor for the first time asserted that he claimed an exemption of up to $50,000, not the $10,000 claimed in the May 2, 2006 amendment to his schedules.

4

Although the recovery on Benison's remaining unsecured claim in this case could be diluted by the Debtor's homestead exemption claim, Benison did not attend the February 7, 2007 hearing; instead, counsel for the Trustee disclosed that Benison had assigned all of its rights in respect of its objection to the Trustee.

At the February 7, 2007 hearing, the Trustee relied on three alternative grounds for the timeliness of his objection:  the assignment from Benison, the fact that the section 341(a) meeting in the chapter 7 case had not been concluded for thirty days before the filing of the Trustee's objection, and the Debtor's January 23, 2007 response to the objections, which raised the amount of his homestead exemption claim by $40,000. The Trustee also asserted that the Debtor never occupied the Property as his principal residence, which was, instead, a leased apartment in New York City.  Pleadings and previous statements by the Debtor under oath corroborated this assertion.  At the hearing, it was clear that the Property was a weekend or vacation property that the Debtor only intended to make his principal residence in the future, after he completed construction and could occupy it for that purpose.

## Discussion

**A.  The Trustee's homestead objection was timely.**  Bankruptcy Rule 4003(b) provides:

> Objecting to a Claim of Exemptions.  A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.

5

Fed. R. Bankr. P. 4003(b).  As noted, the Trustee has offered three alternative reasons why his objection to the Debtor's homestead exemption is timely under Bankruptcy Rule 4003(b).

    1.  <u>Assignment from Benison</u>.  First, the Trustee contends that the Court need not consider the timeliness of his own objection because Benison assigned him its objection, which clearly was filed within the first alternative deadline contained in Rule 4003(b) and timely supplemented under the Rule's second alternative deadline after the Debtor amended his homestead exemption claim on May 2, 2006.

    The Trustee has not cited any precedent for this proposition, nor has the Court located any.  That one may cure an untimely objection to a claimed exemption by the assignment of a timely objection appears, at a minimum, however, to be problematic in light of the constraints imposed by Bankruptcy Rule 4003(b).  <u>See</u> <u>Taylor v. Freeland & Kronz</u>, 503 U.S. 638, 644 (1992) (strictly limiting objections to exemption claims to the periods set forth in Rule 4003(b)).  Under the current version of Rule 4003(b), a motion for an extension of time to object must be made before the expiration of the later of the thirty-day periods stated therein, and the Trustee made no such motion; Bankruptcy Rule 4003(b) does not refer to assignment as an alternative basis for obtaining an extension.

    The foregoing problem with the Trustee's argument is highlighted, moreover, because it appears that Benison's assignment to the Trustee was an afterthought, not provided for in the Benison settlement agreement, pursuant to which Benison appears to have tried to shift to the estate the cost of pursuing Benison's objection to the Debtor's claimed homestead exemption.

On the other hand, as discussed below, courts appear generally to assume that if a chapter 13 trustee makes a timely objection to an exemption claim before the case is converted, the chapter 7 trustee may pursue the pre-conversion objection, which suggests that objections to exemption claims are transferable, at least by chapter 13 trustees to chapter 7 trustees.  Moreover, the Trustee's objection is asserted on the same basis as Benison's; thus, the Trustee is not attempting to cure a substantive defect on the merits by means of the assignment of Benison's unquestionably timely objection.

Ultimately, however, the Court need not decide the issue because of the merits of the Trustee's other two arguments that his objection was timely.

2.  The date for objecting to the exemption claim runs from the conclusion of the chapter 7 section 341(a) meeting, which properly had not concluded, not the pre-conversion, chapter 13 section 341(a) meeting.  Under the first of Bankruptcy Rule 4003(b)'s alternative limitations periods, an objection to an exemption claim is timely if filed within 30 days after the meeting of creditors [held in the Debtor's case] under § 341(a) [of the Bankruptcy Code was] concluded."  Fed. R. Bankr. P. 4003(b) (emphasis added).  Unfortunately, Bankruptcy Rule 4003(b) does not expressly address those instances when, as here, a case has been converted from one chapter of the Bankruptcy Code to another.  In such cases, there is not just one section 341(a) meeting.  There are at least two:  one required to be held reasonably soon after the filing of the bankruptcy petition and one required to be held reasonably soon after the entry of the order converting the case.  See 11 U.S.C. § 341(a) (providing that the United States trustee shall convene and preside at a meeting of creditors within a reasonable time "after the order for relief") and 11 U.S.C. § 348(a) (providing that "[c]onversion from a case under

one chapter of this title to a case under another chapter of this title constitutes an order for relief. . . .").  See also Fed. R. Bankr. P. 2003(b)(2) and (3) (describing the business of the section 341(a) meeting in a chapter 7 case, including the creditors' right to elect a chapter 7 trustee); F & M Marquette Bank v. Richards, 780 F.2d 24, 25 (8th Cir. 1985) (new section 341(a) meeting is provided for on conversion to chapter 7); In re Henson, 302 B.R. 884, 888-89 (Bankr. N.D. Cal. 2003).

If the Debtor correctly construes Bankruptcy Rule 4003(b)'s reference to "the" section 341(a) meeting to mean the first such meeting, which was concluded before conversion of his case to chapter 7, the Trustee's exemption objection would not be timely under the first alternative limitations period set forth in Rule 4003(b); however, if the post-conversion section 341 meeting is "the" meeting intended by the Rule, the Trustee's objection could be timely, because, as discussed in more detail below, that meeting properly was not concluded outside of the time to object.

No other provision of the Bankruptcy Code and Bankruptcy Rules specifically addresses which of these meetings is the meeting referred to in Bankruptcy Rule 4003(b), and the Advisory Committee Note to Rule 4003(b) is silent on the point. Not surprisingly, therefore, several courts have considered the question, which is the subject of many conflicting opinions.[4]

The Debtor relies on Bell v. Bell (In re Bell), 225 F.3d 203 (2d Cir. 2000), for his contention that the section 341(a) meeting referred to in Bankruptcy Rule 4003(b)

---

[4] Some courts refer to "majority" and "minority" positions on the issue.  See In re Fonke, 321 B.R. 199, 201 (Bankr. S.D.Tex. 2005).  The cases are about evenly divided, however, and, in addition, are not consistently divided along the same rationales; furthermore, as discussed below, different rationales can be applied to cases converted from chapter 11 to chapter 7 than to cases converted, like the Debtor's, from chapter 13 to chapter 7.  Thus, even if one were inclined to follow a majority view for the sake of consistency, it cannot be identified.

is the pre-conversion section 341(a) meeting, and, obviously, more analysis would be unnecessary if <u>Bell</u> were controlling on its facts and rationale.  It is not controlling, however.

       <u>In re Bell</u> -- which pertained to a chapter 7 case converted from chapter 11 -- states twice that its holding does not apply to a chapter 7 case converted, as here, from chapter 13.  225 F.3d at 207 n.1 and 218.  Indeed, much of <u>Bell</u>'s holding depends on distinctions between the provisions of the Bankruptcy Code applicable to conversion of a case from chapter 11 to chapter 7 and those applicable to conversion of a case from chapter 13 to chapter 7.  <u>Id.</u>

       At least one other factor distinguishes the present case from <u>In re Bell</u>:  the first of the decision's three statutory rationales was based upon a clause that no longer appears in Bankruptcy Rule 4003(b).  <u>See</u> 225 F.3d at 211.  The version of Bankruptcy Rule 4003(b) applicable in <u>Bell</u> provided that objections to exemptions must be made "within 30 days after the conclusion of the meeting of creditors <u>held pursuant to [Bankruptcy] Rule 2003(a)</u>" (emphasis added).  The court considered Rule 4003(b)'s reference to Bankruptcy Rule 2003(a) to be significant, because under Rule 2003(a) the section 341(a) meeting in the chapter 11 case was required to be convened within 40 days of the bankruptcy petition date, subject to an extension to 60 days.  The court concluded, therefore, that Rule 4003(b) could not contemplate the time for objections to exemption claims to run from the post-conversion section 341(a) meeting, in the chapter 7 case, which was months after the date required by Rule 2003(a) for the pre-conversion meeting to be held.  <u>In re Bell</u>, 225 F.3d at 211-13.

       [A]s noted above, the text of Rule 4003(b) does not refer to any 'meeting of creditors' but rather 'the meeting of creditors held pursuant to Rule

2003(a).' As explained above, that restriction limits the time period for objections to 30 days following the conclusion of a meeting of creditors convened within 40 (or 60) days of the 'order for relief.'

Id. at 213. See also id. at 218: "[B]ecause the meeting of creditors held under Rule 2003(a) must be held within 40 days of the order for relief, see Rule 2003(a), objections made six months after the conclusion of that meeting of creditors are untimely."

However, after Bell was decided, Bankruptcy Rule 4003(b)'s reference to Rule 2003(a) was deleted. Rule 4003(b) therefore no longer directs one to look to the first section 341(a) meeting required to be held, as Bell interpreted it,[5] but merely to the conclusion of "the" meeting of creditors held under section 341(a), which by the plain terms of Rule 4003(b) and Bankruptcy Code sections 341(a) and 348(a) could mean "the" meeting required to be held promptly after the order for relief converting the chapter 13 case to chapter 7, that is, the meeting in the pending chapter 7 case.

Moreover, the amendment of Rule 4003(b) undercuts the logic of the second statutory rationale for In re Bell, also -- that "the period for objections [to exemption claims] is not within the specifically enumerated exceptions to the general rule that the date of the 'order for relief' is unaffected by conversion, see 11 U.S.C. § 348(a), (b), therefore this limitations period remains unaffected by conversion." 225 F.3d at 211 (emphasis added). In re Bell could logically consider the date of the order for relief to be relevant to Bankruptcy Rule 4003(b) only because the court believed that Rule 4003(b)'s reference to Bankruptcy Rule 2003(a) required focusing on the date of the "Original Meeting" after the petition date, that is, after the first order for relief. Id. at 212. Without

---

[5] Both before and after the amendment of Bankruptcy Rule 4003(b), Bankruptcy Rule 2003 set deadlines for holding section 341(a) meetings in cases under chapters 11, 13, or 7, including after conversion to another chapter. What changed, however, was Rule 4003(b)'s specific reference to Rule 2003(a), which In re Bell determined to be significant.

that focus, the date of the first order for relief would be irrelevant to Rule 4003(b):  as

noted above, Rule 4003(b)'s first alternative limitations period does not run thirty days

after the date of the first order for relief, but, rather, thirty days after the conclusion of the

section 341(a) meeting, and a new section 341(a) meeting is required to be held after

conversion of the case because conversion constitutes a new order for relief regardless of

the date of the first order for relief.  See In re Henson, 302 B.R. at 888-89:

> The fact that § 348 does not 'reset' the date for the order for relief does not
> mean that FRBP 2003 and § 341 do not apply to a case that is converted to
> Chapter 7 from Chapter 13 -- . . . since § 348(a) provides that a conversion
> order constitutes an order for relief under the new chapter, § 341 calls for
> a meeting of creditors to be held within a reasonable time post-conversion.
> In other words there are two orders for relief in a converted case. . . .
> Accordingly the Bankruptcy Code does require a § 341 meeting to be held
> after a case is converted from one chapter to another.

In other words, after the reference to Rule 2003(a) was deleted from

Bankruptcy Rule 4003(b), neither Rule 4003(b) nor Bankruptcy Code sections 348(a) and

(b) direct one to the date of the first section 341(a) meeting.  For the same reason, the fact

that Fed. R. Bankr. P. 1019(2) does not list Rule 4003(b) among the Bankruptcy Rules

whose time limitations begin to run anew after the conversion date cannot be considered

instructive.  There is no need to include Rule 4003(b) in that list, whereas each of the

Rules that is listed in Rule 1019(2) refers to the "first" meeting of creditors, which, but

for its being listed in Rule 1019(2), could be construed in the light of the last sentence of

Bankruptcy Code section 348(a) to refer to the meeting already held in the pre-converted

case.  See, e.g., In re Wiggins, 341 B.R. 501, 505 (M.D. Pa. 2006) ("Rule 4003(b) talks

about the thirty-day period 'after the meeting of creditors under section 341(a)' (emphasis

added), while the rules mentioned in Rule 1019(2) [pertaining to case conversion], Rules

3002, 4004 and 4007, talk about time periods running from 'the first meeting of

creditors'" (emphasis added), that is, the meeting held first, in the pre-conversion case);

see also In re Campbell, 313 B.R. 313, 320 (10th Cir. B.A.P. 2004); In re Hopkins, 317

B.R. 726, 731-32 (Bankr. E.D. Mich. 2004) (statutory construction maxim of expresio

unius est exclusio alterius should not apply to Rule 1019(2)'s omission of Rule 4003(b);

it would be redundant for Rule 1019(2) to list Rule 4003(b)); In re Leydet, 150 B.R. 641,

643 (Bankr. E.D. Va. 1993) (same).[6]

    Thus two of the three statutory rationales (including the only one found in

the text of Bankruptcy Rule 4003(b), itself) for In re Bell's holding no longer appear to

apply.

    Bell's third rationale, 225 F.3d at 211, involved an analysis of Rule

4003(b) in light of its statutory context to determine which interpretation is consistent

with the overall legislative regime. See United Sav. Ass'n v. Timbers of Inwood Forest

Assocs., Ltd., 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic

endeavor. A provision that may seem ambiguous in isolation is often clarified by the

remainder of the statutory scheme -- because the same terminology is used elsewhere in a

context that renders its meaning clear, or because only one of the permissible meanings

produces a substantive effect that is compatible with the rest of the law.") (citations

omitted). As both the majority and the dissenting opinions in In re Bell recognized, the

---

[6] Without reference to Rule 2003(a), an expresio unius argument with regard to Bankruptcy Code sections 348(b) and (c), 225 F.3d at 213-14, makes even less sense than when applied to Rule 1019(2). See In re Henson, 302 B.R. at 888-89. Indeed, the majority in Bell itself discounted the argument when it acknowledged that, notwithstanding Bankruptcy Code section 341's omission from section 348(b), another section 341(a) meeting must be convened after conversion, id. at 214 n.16, and clarified that "[w]e hold only that a post-conversion meeting of creditors does not automatically reset the time periods keyed to the order for relief, unless section 348 otherwise provides." Id. (emphasis added). However, as noted above, Rule 4003(b) no longer makes reference to Rule 2003(a) with its "time period keyed to the order for relief" as Bell interpreted it; instead, Rule 4003(b) now simply keys off of "the" section 341(a) meeting, which the order converting the case, as a second order for relief, triggers again.

crux of this analysis focuses on the status, after conversion of the bankruptcy case, of property successfully exempted before conversion.  225 F.3d at 215, 226 (dissenting op.).

      For the majority in <u>Bell</u>, this was a fairly easy question in the context of a chapter 7 case converted from chapter 11.  In chapter 11, property acquired by the debtor postpetition would not constitute property of the estate.  <u>Id.</u> at 215.  Such postpetition property includes property that revests in the debtor through the exemption process.  <u>Id.</u> at 215-16, <u>citing</u>, among other authorities, section 522(l) of the Bankruptcy Code, 11 U.S.C. § 522(l) (providing that the debtor shall list property claimed as exempt and "unless a party in interest objects, the property claimed as exempt on such list is exempt"), and <u>Redfield v. Peat, Marwick Mitchell & Co.</u> (<u>In re Robertson</u>), 105 B.R. 440, 446 (Bankr. N.D. Ill. 1989) ("The effect of the automatic allowance of a claim of exemption due to the expiration of the 30-day period is, under well-settled case law, to re-vest the property in the Debtor and end its status as property of the estate.").  Therefore, because no other provision of the Bankruptcy Code provides for the recapture of previously exempted property upon the conversion of a case from chapter 11 to chapter 7, Bankruptcy Rule 4003(b), as a mere procedural rule, may not be interpreted to abrogate the substantive property right accorded the debtor by section 522(l).  <u>Id.</u> at 216-18.  <u>See</u> <u>also</u> <u>In re Smith</u>, 235 F.3d 472, 478 (9th Cir. 2000).

      In the foregoing analysis, however, <u>Bell</u> significantly distinguished the status of property of the estate in a case converted from chapter 13 to chapter 7, a distinction clearly relevant here.  Specifically, the court noted that Bankruptcy Code section 1306 provides that "Property of the [chapter 13] estate includes, in addition to the property specified in section 541 of this title -- all property of the kind specified in such

section that the debtor acquires after the commencement of the case but before the case is

. . . converted to a case under chapter 7. . . .” In re Bell, 225 F.3d at 217.  See 11 U.S.C. §

1306(a)(1).  Moreover, 11 U.S.C. § 348(f) provides:

> (1)    Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title --
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion. . . .
>
> (2)    If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.[7]

Thus, unlike conversion of a case from chapter 11 to chapter 7, conversion

of a case from chapter 13 to chapter 7 results in assets that were property of the estate on

the chapter 13 petition date (such as property subsequently exempted) and are still within

the debtor's possession or control on the conversion date (as well as, if the debtor acted in

bad faith, all property acquired after the chapter 13 petition date) being included in the

chapter 7 estate.  Id. at 217-18.  In re Bell recognized, therefore, that the third rationale

for its holding is not necessarily applicable in chapter 13 cases converted to chapter 7.  Id.

at 216-17:

> The dissent reads 11 U.S.C. § 348(f)(1) to include in the converted estate property exempted from the Chapter 13 estate but still in the possession of the debtor at the time of conversion, even in those cases where the conversion is in good faith such that other property acquired post-petition is not included in the converted estate. . . .  This is certainly a proper

---

[7]    Bankruptcy Code sections 348(f)(1), (2) were intended to clarify that, absent conversion in bad faith, property of the estate in a chapter 7 case converted from chapter 13 would include only property of the estate as of the date of the filing of the chapter 13 petition that remains in the possession of or is under the control of the debtor on the conversion date.  In re Bell, 225 F.3d at 217; 3 Collier on Bankruptcy ¶¶ 348.07[1]-[2] (15th ed. 2006) at 348-24-5.

> reading.  What is less clear is how it helps the dissent's argument in the
> context of Chapter 11 to Chapter 7 conversions -- the limit of our holding.

Id. 217 n. 19 (emphasis added).

In light of Bell's third rationale being the only one apparently to have

survived the deletion of Rule 4003(b)'s reference to Rule 2003(a) -- as well as its being

the most cogent of Bell's three bases -- should Bell's distinction, in dicta, between the

inability to "recapture" exempt property in cases converted from chapter 11 to chapter 7

and the ability to do so in cases converted from chapter 13 to chapter 7 be followed?

Other courts have done so.  See In re Wiggins, 341 B.R. at 502, where the District Court

stated that its holding that the first limitations period under Rule 4003(b) runs from the

conclusion of the post-conversion section 341(a) meeting did not undercut Bankruptcy

Code section 522(l), because in a case converted from chapter 13 section 348(f)(1)(A) of

the Bankruptcy Code "means that any exempted property is brought back into the estate,

as long as it has remained in the possession of Debtors or under their control. . . .  Section

522(l) therefore does not defeat the Chapter 7 trustee's right to file objections." Id. at

505-506 (citations omitted).  See also In re Campbell, 313 B.R. at 320-21 (same);[8]

---

[8] In Campbell, the Tenth Circuit Bankruptcy Appellate Panel also made the following
related observation:

> Property claimed as exempt is property of the estate on a debtor's petition date.  It revests
> in the debtor when the exemption is allowed, either by court order or because of the lack
> of a timely objection.  Property of the estate also revests in the debtor upon the
> confirmation of a Chapter 13 plan under § 1327(b).  Such revested property, being
> property that was property of the estate on the date that a debtor files a Chapter 13
> petition, is property of the Chapter 7 estate upon conversion under § 348(f) if it is still in
> the debtor's possession.  To allow property revested under § 522(l) to be excluded from
> the scope of § 348(f) would require that property revested under § 1327 to likewise be
> excluded.  This would have the effect of rendering § 348(f) meaningless in Chapter 13
> cases converted after the confirmation of a plan.  The revesting of property under § 522(l)
> does not immunize it from being brought into the estate upon conversion of a Chapter 13
> case.

Id. at 321 (citations omitted).

15

Obuchowski v. Freese (In re Freese), 1996 Bankr. LEXIS 132 (Bankr. D. Vt. February 7,

1996) (were Bankruptcy Code section 348(f)(1) effective before the commencement of

the case, Bankruptcy Rule 4003(b)'s limitations period would have run from the

conclusion of the post-conversion section 341(a) meeting with regard to property claimed

as exempt that was in the debtor's possession or control on the date of conversion).

Granted there are thoughtful opinions to the contrary.  See, for example, In

re Fonke, 321 B.R. at 199; In re Rogers, 278 B.R. at 201 (Bankr. D. Nev. 2002); and

DiBracio v. Ferretti (In re Ferretti), 220 B.R. 883 (Bankr. S.D. Fla. 1999), aff'd without

opinion, 268 F.3d 1065 (11th Cir. 2001), which to some extent rely on sections 522(l) and

522(c) of the Bankruptcy Code, which provides,

> Unless the case is dismissed, property exempted under this section is not
> liable during or after the case for any debt of the debtor that arose, or that
> is determined under section 502 of this title as if such debt had arisen,
> before the commencement of the case. . . .

11 U.S.C. § 522(c).  These provisions, they reason, when coupled with Bankruptcy Code

section 348(f)(2), arguably trump Bankruptcy Code sections 1306 and 348(f)(1)(A)

(except in cases where the debtor has acted in bad faith) and prevent an exemption

allowed in a chapter 13 case because of the running of Rule 4003(b)'s limitations period

being subjected to attack again after the case is converted to chapter 7.  In re Fonke, 321

B.R. at 205-208.  See also In re Rogers, 278 B.R. at 204; In re Ferretti, 230 B.R. at 889-

90.

Ultimately, however, the more specific statutory provision, which actually

refers, unlike Bankruptcy Code sections 522(c) and 522(l), to conversion of the case, is

Bankruptcy Code section 348(f)(1)(A), and, therefore, it should control.  The Property

clearly was property of the estate at the start of the chapter 13 case and was in the

Debtor's possession or control on the chapter 7 conversion date; it would, therefore,

constitute estate property following conversion to chapter 7.  11 U.S.C. §§ 522(b)

(property is not exempt on petition date; debtor must first claim it as exempt and then

exemption must be allowed); 348(f)(1)(A).  If sections 348(f)(1)(A) and 1306 of the

Bankruptcy Code provide that the Property became estate property upon conversion,

then, under the logic of Bell, Wiggins, and Campbell, discussed above, the pre-

conversion exemption was open to fresh challenge pursuant to Rule 4003(b).[9]

Bankruptcy Code section 348(f)(2) should not be read to undercut this

plain meaning, moreover, but, rather, to provide that if the debtor acts in bad faith, all

pre-conversion property, including property that did not come into the chapter 11 estate

until after the petition date -- not just property that constituted property of the estate on

the petition date and remains in the debtor's possession or control -- is property of the

estate in the converted case.  11 U.S.C. § 348(f)(2).  See Alexander v. Jensen-Carter (In

re Alexander), 236 F.3d 431, 432 (8th Cir. 2001) (enactment of section 348(f)(2) of the

Bankruptcy Code does not present an obstacle to chapter 7 trustee's post-conversion

objection to exemption claim).

The majority and dissenting opinions in Bell also debated the policy, or,

more aptly, the common sense,[10] of starting a new limitations period under Bankruptcy

Rule 4003(b) from the conclusion of the post-conversion section 341(a) meeting.

According to the dissent in Bell, given the material differences between chapter 11 and

chapter 7, parties in chapter 11 cases approach exemption claims differently than chapter

---

[9] Distinguished from this fact pattern would be those instances in which the exemption claim was actually litigated and decided before conversion of the case, such as in In re Ferretti, 230 B.R. at  890.

[10] Such an argument is best seen not as a court imposing its own policy views but, rather, deciding whether the contrary interpretation is so illogical or unfair that Congress would not have intended it.

7 trustees and creditors; therefore, it does not make sense to assume Congress meant to

preclude a chapter 7 trustee and creditors from objecting to an exemption on the basis

that objections were not filed within thirty days after the chapter 11 section 341(a)

meeting.  In re Bell 225 F.3d at 223 (dissenting op.).  See also In re Havenec, 175 B.R.

920, 923-24 (Bankr. N.D. Ohio 1994); In re de Kleinman, 172 B.R. at 767-69.

   Similar arguments have been made with respect to the material differences

between chapter 13 and chapter 7.  See, e.g., Weissman v. Carr (In re Weissman), 173

B.R. 235, 236-37 (M.D. Fla. 1994); In re Campbell, 313 B.R. at 321-22; In re Hopkins,

317 B.R. at 732-33 (noting different statutory duties of trustees in chapter 13 and chapter

7).  See also In re Booth, 259 B.R. 413 (Bankr. M.D. Fla. 2001).  Indeed, the common

sense interpretation was perhaps best stated by the Tenth Circuit Bankruptcy Appellate

Panel in Campbell:  to adopt the contrary view that the conclusion of the pre-conversion,

chapter 13 section 341(a) meeting triggers the limitations period

> means that [chapter 13] trustees or other parties in interest must object to a
> questionable claim of exemption, even if it serves no purpose given the
> facts of the case as they presently exist.  They must plan . . . for a future
> contingent event, i.e., possible conversion of the case, and the impact that
> the claimed exemption would have in the converted case.  Furthermore,
> not only must they plan for a potential conversion, but they must litigate
> the objection based on some unknown facts and for an uncertain purpose.
> This is contrary to basic principles of federal jurisdiction.

313 B.R. at 319.

   In re Bell stated that its statutory interpretation made it unnecessary to

address this argument.  225 F.3d at 218 n. 22.  Nevertheless, relying on statistics and the

existence of alternative means to correct debtor misconduct, the court reasoned that its

holding would rarely lead to individual chapter 11 debtors' abusive conversion of their

cases after the exemption period had run in chapter 11.  Id. at 219-20.  It also observed

that most creditors in chapter 11 cases are sophisticated enough to object to improper

exemption claims, in addition to being able to rely on official creditors committees, and,

therefore, do not need a trustee to protect them.  Id. at 221.

Perhaps significantly, the court again took care, however, to distinguish

chapter 11 cases from chapter 13 cases, in which creditors are often less sophisticated and

the debtor is always an individual, in contrast with the vast majority of chapter 11

debtors' ineligibility to claim exemptions.  Id. at 219-220.  Such reasoning could be

another basis for distinguishing Bell from the present matter.

On the other hand, the motivations for objecting to exemption claims in

chapter 13 cases and the motivations for objecting to such claims in chapter 11 cases

differ to about the same degree from the reasons for objecting to exemption claims in

chapter 7.  See, e.g., In re Ferretti, 230 B.R. at 889-90.   At least one opinion has even

concluded that, on policy grounds, when a chapter 13 case has been converted to chapter

7 the conclusion of the pre-conversion meeting should control under Rule 4003(b),

whereas the conclusion of the post-conversion meeting should control in cases converted

from chapter 11.  In re Lang, 276 B.R. 716, 719 (Bankr. S.D. Fla. 2002).  Without going

that far, it does appear that precluding a chapter 7 trustee from objecting to an invalid

exemption claim because the claim was not objected to pre-conversion is about as unfair

whether the case was converted from chapter 13 or from chapter 11.

As noted, such unfairness did not much concern the majority in Bell.

Nevertheless, the fairness, or common sense, argument does support a statutory

interpretation that looks to the conclusion of the post-conversion section 341(a) meeting

as "the" meeting under Rule 4003(b), and should tip the balance if one believes that Rule 4003(b) in its present form and statutory context is truly ambiguous.

For the foregoing reasons, therefore, under Bankruptcy Rule 4003(b) the Trustee had thirty days from the conclusion of the chapter 7 section 341(a) meeting to object to the Debtor's homestead exemption claim.

This is not the end of the analysis, however, because one still must ask whether the Trustee's objection was timely given that the chapter 7 section 341(a) meeting was kept open past the date, in July, for which it was last scheduled.  As other courts have noted, see In re Cherry, 341 B.R. 581, 585-86 (Bankr. S.D. Tex. 2006); In re James, 260 B.R. 368, 371-72 (Bankr. E.D.N.C. 2001), there are at least three different approaches to whether a trustee may rely on the first alternative limitations period in Rule 4003(b) if the a meeting of creditors under Bankruptcy Code section 341(a) was adjourned as here:  a "bright line" approach, which holds that a trustee may never adjourn a section 341(a) meeting without first setting the adjourned date (and, therefore, that the meeting was concluded for purposes of Rule 4003(b) on the last date for which it was actually scheduled);[11] a "case-by-case" approach, which determines whether the trustee was justified in keeping the section 341(a) meeting open based on the facts and circumstances of the particular case;[12] and a view that the section 341(a) meeting is not properly ended unless the trustee declares it is concluded or the court so orders, thus

---

[11] See, e.g., In re Smith, 225 F.3d 472, 476 (9th Cir. 2000); In re Levitt, 137 B.R. 881, 883 (Bankr. D. Mass. 1992).

[12] See, e.g.,; In re Cherry, 341 B.R. at 586-87; In re Brown, 221 B.R. 902, 906 (Bankr. M.D. Fla. 1998); see also In re Friedheim, 336 B.R. 110, 112 (Bankr. N.D. Tex. 2005).

placing the burden on the debtor to request the meeting's conclusion.[13]  A clear majority

disfavors the bright-line approach and a slight majority favors the case-by-case approach.

Apparently neither the Second Circuit nor any court in this district has

taken a position on the issue.[14]  Reviewing the various approaches described above, I am

persuaded by the rationale of the case-by-case analysis articulated in In re Cherry, 341

B.R. at 587; In re Brown, 221 B.R. at 908-907, and similar cases.  (Moreover, given the

practice of trustees in this district to adjourn the section 341(a) meeting if warranted by

circumstances such as the complexity of the debtor's estate and the debtor's cooperation,

or lack thereof, I would not impose a bright line approach without suitable advance

warning.  See In re James, 260 B.R. at 372.)

Having considered the relevant facts, the Trustee acted reasonably in

keeping the section 341(a) meeting open at least until thirty days before January 4, 2007,

the date he filed his objection to the Debtor's homestead exemption claim.  During the

late summer and early fall of 2006, the Trustee properly focused on concluding a

refinancing of the Property with the Debtor and his partner (which the Debtor professed

was his primary goal); and when that transaction fell through after the Debtor objected to

it, the Trustee turned to considering numerous other options for liquidating the estate's

assets (which are complex, including, among other things in addition to the Property,

other real property and an art collection) to the extent necessary to pay creditors.  That

---

[13] See, e.g., In re Koss, 319 B.R. 317, 321 (Bankr. D. Mass. 2005); In re DiGregorio, 187 B.R. 273, 276
(Bankr. N.D. Ill. 1995).  See also In re De Carolis, 259 B.R. 467, 470-71 (B.A.P. 1ˢᵗ Cir. 2001) (rejecting
bright line approach and finding that under either of the other two approaches the debtor did not show that
the section 341(a) meeting was improperly kept open).

[14]  It was raised but not decided in Gazes v. DeArakie (In re DeArakie), 199 B.R. 821, 826 (Bankr.
S.D.N.Y. 1996).  See also In re de Kleinman, 172 B.R. at 770 (section 341(a) meeting not concluded for
purposes of Rule 4003(b) on first day of scheduled meeting but only after several adjournments over
several months).

led to the Benison settlement, for which the Trustee sought approval on December 19,

2006.  As noted above, moreover, the Debtor's disclosure with respect to his other assets

was poor -- the record of this case reflects that the Debtor did not cooperate with the

Trustee in providing business records, describing the location of assets, or providing the

Trustee with access to them -- to the extent that the Trustee eventually sought and

obtained the denial of the Debtor's discharge.  The Trustee thus legitimately concluded

that more investigation between July 2006 and at least December 5, 2006 (indeed, at least

through the Court's approval of the Benison settlement and denial of the Debtor's

discharge) would be necessary and, therefore, reasonably kept the section 341(a) meeting

open.  See Petit v. Fessenden, 182 B.R. 59, 63 (D. Me. 1995), aff'd on other grounds 80

F.3d 29 (1st Cir. 1996) (several months' delay of section 341(a) meeting while trustee and

his counsel evaluated the estate and the debtor, who was "particularly litigious and

obstructionist," was reasonable, especially as the debtor did not seek the meeting's

conclusion).

       The Trustee's objection therefore was timely because it was made at least

within thirty days after the date the section 341(a) meeting was concluded, or would

reasonably be deemed to have concluded.

       3.  Alternatively, the Debtor's January 23, 2007 response amended his

homestead exemption claim, extending the objection deadline.  As noted above,

Bankruptcy Rule 4003(b) provides two alternative periods for objecting to exemption

claims.  If the debtor files new exemptions or amends those previously claimed,

regardless of whether the case was previously converted, Bankruptcy Rule 4003(b) starts

an alternative thirty-day period to object to the newly claimed or amended exemption.  In

re Bell, 225 F.3d at 218 n.2.  The Trustee contends, therefore, that when the Debtor's

January 23, 2007 response to the objections to his homestead exemption claim raised the

amount of that claim by $40,000, a new period to object arose under Rule 4003(b).

It may be asked, however, whether the Debtor's January 23, 2007

response was an "amendment to the list or supplemental schedules" under Bankruptcy

Rule 4003(b).  The answer hinges, in turn, on the answer to two other questions.  First,

was the $40,000 increase that was stated in the Debtor's January 23, 2007 response

material enough to constitute an amendment, or, to the contrary, would the Trustee be

bound to the $50,000 amount even by the Debtor's first claim of a $10,000 exemption?

The answer is clear:  the change was necessary to bind the Trustee to the higher, $50,000

amount.  The Debtor did not originally claim the full amount to which he might be

entitled under New York's homestead exemption; instead, he listed an exemption under

N.Y. C.P.L.R. § 5206 in the specific amount of $10,000.  In similar circumstances,

debtors consistently have been held bound by the originally listed amount unless they

later amend the claim.  See Seror v. Kahan (In re Kahan), 28 F.3d 79 (9th Cir. 1994), cert.

denied, 513 U.S. 1150 (1995), which held with respect to an amendment under

California's similar homestead exemption statute,

> [The debtor] contends that the second schedule did not reopen the time to
> object because it was merely a clarification of the March 1986 Schedule.
> We disagree.  The Amended Schedule differed significantly from the
> initial schedule by claiming a higher exemption amount.  We read Mr.
> Kahan's initial exemption claim as limited to the 'value claimed as
> exempt,' namely $45,000, rather than as a broad exemption claim that
> covered his undivided one-half interest in the Property.

Id. at 81-2; Foster v. Moore (In re Moore), 175 B.R. 13, 16 (Bankr. S.D. Ohio 1994) ("If

a debtor states that he or she does not claim an exemption greater than a specifically

listed amount, or uses other language that limits the amount, for example, 'homestead exemption -- $5,000 per person,' then the debtor's claimed exemption will be limited to the amount claimed."); <u>Mercer v. Monzack</u> (<u>In re Mercer</u>), 53 F.3d 1, 33 (1st Cir. 1995), <u>cert. denied</u>, 517 U.S. 1103 (1996).  <u>See also</u> <u>Walsh v. Hendrikson</u> (<u>In re Hendrikson</u>), 274 B.R. 138, 145 (Bankr. W.D. Pa. 2002) (because the schedules are controlled by the debtor, any ambiguity therein should be construed against the debtor), <u>citing</u> <u>Hyman v. Plotkin</u> (<u>In re Plotkin</u>), 967 F.2d 1316, 1319 n.6 (9th Cir. 1992).[15]

Second, can the Debtor amend his exemption claims for purposes of Bankruptcy Rule 4003(b) in a document such as his January 23, 2007 response, or only if he files and serves something labeled an "amendment" or "supplement"?  In other words, would the Trustee be bound by the larger, $50,000 amount if he did not object to it within thirty days of the filing of the January 23, 2007 response, or could he safely wait to object until thirty days after the Debtor filed a formal amendment or supplement to his schedules that listed the higher figure?  Again the answer is clear.  The Trustee would be bound by the higher amount if he did not object within thirty days of receiving the Debtor's January 23, 2007 response; that is, the response would be deemed an effective amendment of the Debtor's exemption claim at least against those who received actual written notice of it.  <u>See</u>, <u>e.g.</u>, <u>Preblich v. Battley</u>, 181 F.3d 1048, 1053-54 (9th Cir. 1997); <u>In re Hendrickson</u>, 274 B.R. at 145; <u>Gilbert v. Zimmer</u> (<u>In re Zimmer</u>), 154 B.R. 705, 710 (Bankr. S.D. Ohio 1993).  <u>See also</u> <u>In re Sylvia</u>, 236 B.R. 128, 130-31 (Bankr. D. Ct. 1998) (creditor bound by amendment to exemption claim disclosed to it in a brief).

---

[15] <u>Cf.</u> <u>Allen v. Green</u> (<u>In re Green</u>), 31 F.3d 1098, 1100 (11th Cir. 1994), in which the trustee acknowledged that when the debtor listed a $1 exemption for a contingent litigation claim, he knew that the debtor meant "$1" to be a placeholder for the full exemption to which the debtor might be entitled once the claim was liquidated; therefore, the debtor was not held to a $1 exemption.

In light of the foregoing, therefore, the Debtor's January 23, 2007 filing is properly construed as an "amendment to the list [of exemptions] or supplemental schedule" for purposes of Bankruptcy Rule 4003(b), at least as to those parties in interest, such as the Trustee, who received actual notice of it.  Therefore, even if the time to object to the Debtor's claimed homestead objection ran thirty days after the May 2, 2006 amendment, the time for the Trustee to object was extended again on January 23, 2007 under the second alternative limitations period set forth in Rule 4003(b).

**B.  The Trustee has carried his burden on the merits.**  Under N.Y. Debtor & Creditor Law § 282, New York bankruptcy exemptions with respect to realty are limited to those set forth in N.Y. C.P.L.R. § 5206(a), which states:

> Exemption of homestead.  Property of one of the following types not exceeding fifty thousand dollars in value above liens and encumbrances, owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly from the purchase price thereof:
>
> 1.  a lot of land with a dwelling thereon. . . .

(emphasis added).  The Trustee has the burden of proof that the claimed homestead exemption is improper, which he must satisfy by a preponderance of the evidence.  Fed. R. Bankr. P. 4003(c); In re Pless, 202 B.R. 664, 666 (Bankr. N.D.N.Y. 1996).  The relevant inquiry is whether the Property complied with the test set forth in N.Y. C.P.L.R. § 5206(a) on the chapter 13 petition date, not the date the case was converted to chapter 7.  In re Bell, 225 F.3d at 215 (dicta); In re Alexander, 236 F.3d at 432-33; Lowe v. Sandoval (In re Sandoval), 103 F.3d 20, 23 (5th Cir. 1997).  See also Town of Skaneateles v. Scott (In re Scott), 233 B.R. 32, 40 (Bankr. N.D.N.Y. 1998) (bankruptcy exemptions determined as of the petition date).

New York's exemption statute does not define the terms "occupied" and "principal residence" contained in N.Y. C.P.L.R. § 5206.  The courts have consistently construed them, however, in light of the statute's purpose "to protect a debtor-homeowner and his immediate family from losing their family dwelling because of economic adversity."  In re Miller, 103 B.R. 65, 67 (Bankr. N.D.N.Y. 1989) (citations omitted).

Thus, absent special circumstances justifying a constructive presence, such as when the debtor has left his or her principal residence because of a discordant marital situation without establishing a new residence, see In re Smith, 57 B.R. 81 (Bankr. W.D.N.Y. 1985), actual, physical occupancy of the property, along with ownership, on the petition date is a prerequisite to the exemption claim.  In re Scott, 233 B.R. at 40; In re Miller, 103 B.R. at 67 (citations omitted).  And, relatedly, an owner cannot have more than one "principal" residence; the debtor's  principal residence is the one the debtor occupied as of the petition date, as his or her homestead, on a more regular basis than any other residence.  In re Scott, 233 B.R. at 40.  See also In re Miller, 103 B.R. at 65, which disagrees with the Debtor's contention at the February 7, 2007 hearing that the phrase "a principal residence" in N.Y. C.P.L.R. § 5206(a) means any residence, rather than one:

> [A] battle between the meaning of the articles 'a' versus 'the' is of no moment since the operative adjective in the disputed phrase here is 'principal' which means 'most important, consequential or influential.' Thus, there can be no dispute that however arguably 'indefinite' the term 'a' may be, its meaning in NYCPLR § 5206(a) depends on the context and the fact that a debtor can have only one principal residence.

Id. at 68 (citations omitted).  Property acquires exempt homestead status when actual physical presence is coupled with a bona fide intent to reside there as one's principal residence -- not in the future, but on the petition date.  In re Scott, 233 B.R. at 40.

In re Miller held that a vacation home would not qualify as an exempt homestead under New York law, "because there is no actual occupancy on a regular basis.  A contrary result flies in the face of the plain language and purpose of NYCPLR § 5206(a) and (c) -- at the expense of the debtor's creditors -- since the inability to shield a vacation home from the satisfaction of debt would not render the debtor and his family homeless."  103 B.R. at 68, citing In re Galcia, 59 Misc. 2d 511, 299 N.Y.S.2d 723, 725-26 (Sur. N.Y. Co. 1969).  See also In re Tomko, 87 B.R. 372, 375 (Bankr. E.D. Pa. 1988) (applying a similar analysis to "federal" homestead exemption under Bankruptcy Code section 522(d) claimed in respect of property used sporadically and seasonally when the debtor had a different permanent residence).  Applying the same approach to somewhat different facts, In re Scott found that a debtor was not entitled to claim a property as exempt under N.Y. C.P.L.R. § 5206(a), although he was physically present there on the petition date, because an objective inquiry showed that on that date he did not have the requisite intent to make it his home.  233 B.R. at 40-41.  As a legal matter, he lacked permission to move onto the property; in addition, the property "lacked ordinary necessities such as access to public power utilities, running water, and a septic system."  Id. at 41.

In light of the foregoing, the Debtor cannot claim a homestead exemption for the Property under N.Y. C.P.L.R. § 5206(a).  A number of facts, mostly in the form of admissions, establish that as of the chapter 13 petition date (and, for that matter, through the Trustee's sale of the Property to Benison) the Property was not the Debtor's principal residence.  The chapter 13 petition listed the Debtor's address and the location of his principal assets as his New York City apartment; it also stated that New York County,

where his apartment is located, not Ulster County, where the Property is located, was his

county of residence and principal place of business.  See In re Alexander, 236 F.3d at

431-32 (homestead exemption claim denied when debtor listed different address on his

petition); In re Miller, 103 B.R. at 67 (same).  At the February 7, 2007 hearing, the

Debtor also confirmed that he had acknowledged at the chapter 13 section 341(a) meeting

that the Property was vacant.[16]  He has also acknowledged that there was no certificate of

occupancy or insurance for the structures on the Property, or running water.  See In re

Scott, 233 B.R. at 41 ("[w]hile there is no requirement that a plot of land be instantly

habitable to qualify as a homestead," lack of ordinary necessities and legal permission to

reside on the property constitute substantial evidence that it was not the debtor's

homestead).

  At the February 7, 2007 hearing, moreover, the Debtor acknowledged that

he was not living at the Property on the petition date and that over the last several years

he occupied it for only two or three months during the summer (except for every other

weekend last summer spent on Fire Island) and two to three days a week during other

seasons.  This also was confirmed in paragraph 4 of the Debtor's January 23, 2007

response to the objections to his exemption claim, in which he stated that he and his

partner

> were ready to move into the property as of August 2006, at the time that
> the construction was completed, but we have not done so because of the
> continuing issues regarding the subject property as the Court is so well
> aware of.  I could not reside at [the Property] prior to that date as there
> was no home in which to move.  I have stayed on the property for weeks
> at a time since 1999, during which I would work on the property and the

---

[16] The Debtor's explanation at the February 7, 2007 hearing that this statement should be construed to mean only that the Property was "vacant" in the sense that he was at that moment physically present at the 341(a) meeting in New York City, and not on the Property, may have been a clever variation on the question of "the meaning of 'is,'" but it simply was not credible.

construction, but during those periods I would either camp out in the old barn in a tent or keep within the cover of the smaller house as it was being completed, but I could not reside there until the building was complete.

Finally, in paragraph 15 of his January 23, 2007 response, the Debtor states,

I have used, and will continue to use and occupy [the New York City address] until such time as I am permitted to move in my Stone Ridge home, but for all times since 1999 I have considered the Stone Ridge Property to be my residence and not my apartment in NY which I only rent.

Thus, while it may be clear from the foregoing, as well as other statements by the Debtor, that he intended to make the Property his home eventually, it is equally clear that it was not the Debtor's home on the petition date and, therefore, does not qualify for the homestead exemption under N.Y. C.P.L.R. § 5206(a).

## Conclusion

For the foregoing reasons, the Trustee's objection to the Debtor's homestead exemption claim should be granted and the Debtor's claimed homestead exemption in respect of the Property denied.

Dated:  New York, New York
        March 19, 2007

            /s/Robert D. Drain
            United States Bankruptcy Judge