

RE: In re William Charles Bace; Case Number 05-42446 (RDD)
Thomas C. Lambert
to:
rdd.chambers
06/14/2011 12:41 PM
Cc:
nyce30, "'Wolf Joshua'", kozlowski.david
Show Details

2 Attachments

 

NYC Response Papers.pdf  Young Declaration.pdf

Dear Judge Drain,

I made a mistake which may have led the Court to make an erroneous finding of fact in the subject matter.

I appeared on Monday June 6, 2011 with the sole assignment in mind to appear on behalf of New York City Marshal Jeffrey Rose in response to a subpoena which was received the previous Friday afternoon (but not properly served) and to make a motion to quash that subpoena, which I did, and that motion was granted. Then, on page 7 line 19 of the hearing transcript Mr. Bace asks as follows:

Mr. Bace: But he is – before – does this Court have jurisdiction over him as a party, as a named party in this case?
The Court: Well, he's appeared.
Mr. Bace: Okay, that's fine.
The Court: Okay. All right.

The Court's finding that Marshal Rose appeared is based on Mr. Bace's incorrect statements (earlier on page 7) to the effect that the Marshal had an attorney that was present at the hearing of the motion in November. According to the transcript of the November hearing, the Marshal was **not** represented by anyone there, did **not** appear at all, and was **not** served or notified to appear. The Marshal is not a debtor, not a creditor and not party to any adverse proceeding.

We would like an opportunity to put in proof with respect to the Marshal's complete innocence in this matter. I would like the opportunity to present an affidavit or testimony of Marshal Jeffrey Rose. In the meantime, the record is clear. The following proof in the record shows that the Marshal only towed the 1992 Subaru once, based on his correct reading of the computer, and returned the car to Mr. Bace with all towing and storage fees discharged once presented with notice of the bankruptcy:

Response of the City of New York and the Police Department in Opposition dated November 9, 2010, paragraph 2 on pages 9 and 10.
Declaration of Ellen Young in Opposition dated November 4, 2010, paragraphs 15 through 18 on pages 3 and 4.

[above cited pages are attached as PDFs]

I have just spoken with Marshal Jeffrey Rose who confirmed that he only towed the 1992 Subaru once, based on the computer records, and without any knowledge of any bankruptcy or stay. He is innocent and should be found not to have violated the stay **AT ALL**.

I'm terribly sorry that due to my own deficiencies I failed at the correct time to present these matters to the Court and beg the Court's indulgence to allow a decision on the merits. My earlier email appears below.

Thank you.

Most respectfully yours,

Thomas C. Lambert
Lambert & Shackman, PLLC
274 Madison Avenue
New York, NY 10016-0701
212-370-4040 (tel)
212-697-7919 (fax)
TLambert@LambertandShackman.com
www.LambertandShackman.com

---

**From:** Tom Lambert [mailto:TLambert@LambertandShackman.com]
**Sent:** Tuesday, June 07, 2011 5:28 PM
**To:** rdd.chambers@nysb.uscourts.gov
**Cc:** nycc30@gmail.com; Wolf Joshua; kozlowski.david@arentfox.com
**Subject:** In re William Charles Bace; Case Number 05-42446 (RDD)

Dear Judge Drain,
I believe the record will show that there is no indication that Marshal Rose knew or had any notice or could rightfully be charged with any notice of the bankruptcy or the stay at the time of his actions. He performed his independent duties as a NYC Marshal based on his personal correct readings of the computer database. There has not been cited any failure in the performance of HIS duties.
Perhaps, since the City alone will pay for the error, Mr. Bace may even be willing in candor to acknowledge this by a letter to the Court in response to this one.
Regardless, the Marshal should not be held liable.
A copy of this email is being simultaneously sent to the Debtor and the attorneys for the City and the Trustee.
Thank you.
Most respectfully yours,
Thomas C. Lambert
**Lambert & Shackman, PLLC**
**Attorneys for NYC Marshal Jeffrey Rose**
274 Madison Avenue
New York, NY 10016-0701
Tel: 212-370-4040
Fax: 212-697-7919
Cell: 646-522-2803
TLambert@LambertandShackman.com

=

## 2. *The January 6, 2006 Towing of the 1992 Subaru*

DOF's records indicate that the one and only time that the City Marshal towed the 1992 Subaru occurred on or about January 6, 2006. (*See* Young Decl. ¶ 15) Under ordinary circumstances, once DOF receives notice that a bankruptcy petition has been filed, a member of its clerical staff promptly inputs a notation in the relevant computer database indicating that a "hold" is in place and that no further collection action should be taken. (*Id.* ¶ 16) All City Marshals rely on DOF's records in pursuing parking violation claims on behalf of DOF. (*Id.* ¶ 17) Accordingly, absent entry of a "hold," there is simply no means by which DOF is able to prevent acts of collection against an individual with parking violations classified as "in judgment." [3]

In the present case, despite allegations that DOF had previously been served notice of Debtor's pending bankruptcy by mail, it appears either that actual notice was never received, or, at worst, it is plausible that DOF's clerical personnel inadvertently failed to input a "hold" on Debtor's account following any alleged receipt of such notice. (*Id.* ¶ 18) Accordingly, either because notice was not actually received by DOF in this instance, or because no "hold" notation was entered in the files associated with Debtor's many parking violations, it appears that a City Marshal towed Debtor's vehicle as a consequence. (*Id.*)

While at this juncture it remains impossible to explain exactly how or why it came to be that DOF failed to receive actual notice of Debtor's bankruptcy proceeding, or in the alternative, how or why a "hold" was never placed on Debtor's account, it is nonetheless clear that any

---

[3] When an individual fails to challenge or pay their parking fines for a period of not less than 90 days, a judgment is entered with respect to such fines. In the normal course of events, once an individual has accrued more than $350.00 worth of fines "in judgment," any vehicle owned by that individual becomes "tow eligible"—that is, subject to seizure and sale. (Young Decl. ¶ 3) As of November 4, 2010, all of Debtor's outstanding parking fines, penalties, and interest were classified as "in judgment." (*Id.* ¶ 4)

9

towing by DOF did not represent a willful attempt by DOF to violate the automatic stay. (*Id.* ¶ 19) To the contrary, despite this unfortunate confluence of circumstances, the Department of Finance of the City of New York takes the automatic stay very seriously. (*Id.* ¶ 20) The January 6, 2006 towing of Debtor's 1992 Subaru was merely a reflection of an unintentional lack of information in the DOF computer system. (*Id.*) Fortunately, this erroneous towing did not result in any damage to the estate.

Indeed, once Debtor apprised DOF of the pending bankruptcy case, DOF immediately took steps to initiate a "hold" on any further collection action and release the 1992 Subaru to Debtor. (*Id.* ¶ 21) DOF's records show that Debtor obtained a release of the 1992 Subaru on January 24, 2006, and that all towing and storage charges assessed in connection with this tow were completely discharged. (*Id.*) More importantly, DOF's records indicate that DOF took no further action with regard to the 1992 Subaru following that date. (*Id.* ¶ 22) In fact according to such records, the file relating to the January 6, 2006 tow was completely closed shortly thereafter—on or about January 30, 2006. (*Id.*) DOF's records indicate that DOF never auctioned or sold Debtor's 1992 Subaru at any point following the Petition Date. (*Id.* ¶ 23)

### 3. *The January 24th, 2006, and alleged March 1, 2006 Towings*

DOF's records do not reflect any further information regarding the towing or sale of the 1992 Subaru following its release from the City Marshal's possession on or about January 24, 2006. (*See* Young Decl. ¶ 22-23) Aside from the information reflected in the Auction Bill of Sale provided by Debtor, the only other information regarding the handling of the 1992 is set forth by a series of computer printouts obtained from the NYPD's Parking Enforcement District, which were created and stored in the ordinary course of business, and located by the NYPD in

9. DOF's records indicate that Debtor presently owes a total of $2,965.66 in connection with the GMC violations, including penalties and interest.

**Debtor's 1992 Subaru**

10. According to DOF's records, Debtor was at one time the registrant of license plate number "DJE5122," which in turn was associated with a 1992 Subaru (the "1992 Subaru").

11. With respect to the 1992 Subaru, DOF's records indicate that between October 28, 2005 and January 24, 2006 Debtor incurred no less than eleven individual summonses for parking violations (the "1992 Subaru Violations").

12. All of the 1992 Subaru Violations are presently "in judgment."

13. DOF's records indicate that as of the date of this declaration, Debtor has failed to satisfy any of the 1992 Subaru Violations.

14. DOF's records indicate that as of the date of this declaration, Debtor owes a total of $1,985.65 in connection with the 1992 Subaru Violations, including penalties and interest.

15. DOF's records indicate that DOF towed Debtor's 1992 Subaru on only one occasion following the Petition Date, on or about January 6, 2006. The circumstances surrounding this tow are described more fully below.

16. Under ordinary circumstances, once DOF receives notice that a bankruptcy petition has been filed, a member of its clerical staff promptly inputs a notation in the relevant computer database indicating that a "hold" is in place and that no further collection action should be taken.

17. All City Marshals rely on DOF's records in pursuing parking violation claims on behalf of DOF. Accordingly, absent entry of a "hold," there is simply no means by which DOF

3

is able to prevent acts of collection against an individual with parking violations classified as "in judgment."

18. In the instant case, despite allegations that DOF had been served notice of Debtor's pending bankruptcy by mail, it appears either that actual notice was never received, or, at worst, it is plausible that DOF's clerical personnel inadvertently failed to input a "hold" on Debtor's account following any alleged receipt of such notice. Accordingly, either because notice was not actually received by DOF in this instance, or because no "hold" notation was entered in the files associated with Debtor's many parking violations, it appears that a City Marshal towed Debtor's vehicle as a consequence.

19. While it is impossible to explain exactly how or why it came to be that DOF failed to receive actual notice of Debtor's bankruptcy proceeding, or in the alternative, how or why a "hold" was never placed on Debtor's account, it is nonetheless clear that any towing by DOF that may have taken place did not represent a willful attempt by DOF to violate the automatic stay.

20. To the contrary, despite this unfortunate confluence of circumstances, the Department of Finance of the City of New York takes the automatic stay very seriously. The January 6, 2006 tow of Debtor's 1992 Subaru was merely a reflection of an unintentional lack of information in the DOF computer system. And while regrettable, any indirect consequence of this lack of information does not rise to the level of a compensable violation of the automatic stay.

21. In fact, once Debtor apprised DOF of the pendency of his bankruptcy case, DOF immediately took steps to initiate a "hold" on any further collection action and release Debtor's 1992 Subaru to him. Moreover, DOF records show that Debtor was provided a release of his